CINCINNATI BAR ASSOCIATION *v.* HAUCK.

[Cite as *Cincinnati Bar Assn. v. Hauck,* 129 Ohio St.3d 209, 2011-Ohio-3281.]

*Attorneys at law — Misconduct — Failure to maintain client funds in segregated account — Failure to maintain records of client funds — Failure to maintain professional-liability insurance — One year suspension, with six-months stayed.*

(No. 2011-0023 — Submitted March 23, 2011 — Decided July 7, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-022.

_____

**Per Curiam**.

{¶ 1} Respondent, John W. Hauck of Cincinnati, Ohio, Attorney Registration No. 0023153, was admitted to the practice of law in Ohio in 1978. In February 2010, relator, Cincinnati Bar Association, filed a complaint charging respondent with failing to maintain client funds in a separate, interest bearing trust account, failing to maintain adequate records of client funds in his possession, commingling client funds with his own, and failing to notify his clients that he did not carry malpractice insurance.

{¶ 2} The parties have submitted stipulations of fact and misconduct, and a panel of the Board of Commissioners on Grievances and Discipline conducted a hearing to determine the appropriate sanction for respondent's misconduct. The panel and board adopted the stipulated findings of fact and misconduct. While the panel recommended that respondent be suspended from the practice of law for 12 months with six months stayed on conditions, the board, citing extraordinary evidence in mitigation, recommended that the entire 12-month suspension be stayed. Because respondent has stipulated to misconduct involving dishonesty,

fraud, deceit, or misrepresentation, we conclude that an actual suspension is warranted. Accordingly, we suspend respondent from the practice of law for 12 months, with six months stayed on conditions.

**Misconduct**

{¶ 3} In February 2009, respondent issued a $2,800 check from a National City Bank account to the guardian of a minor, representing the proceeds of the minor's personal-injury claim. At the end of March 2009, after discovering that the guardian had not negotiated the check, respondent directed the bank to stop payment. At a guardianship hearing before the probate court, respondent advised the magistrate that there may have been commingling in the account, and that because the account balance had dropped below $2,800, he would need time to replenish the account and reissue the check. He did not remit the funds to the guardian until June 2009.

{¶ 4} Beginning in 2003 and continuing through 2009, respondent commingled his personal and business funds with client funds in a single National City Bank account to avoid overdraft charges on his personal and business accounts. While comingling these funds, respondent failed to maintain adequate records of client funds in his possession.

{¶ 5} The National City Bank account that respondent used is registered to "ABC Company," a nonprofit entity that he had formed. The checks that he issued from that account, however, were deceptive, because they did not identify ABC Company as the owner of the account. Instead, they bore respondent's name followed by "Attorney at Law," and "IOLTA," giving the false impression that the checks were drawn on his client trust account.

{¶ 6} Respondent testified that one of the reasons he used the ABC Company account was to avoid tax garnishments by the Internal Revenue Service ("IRS") for income taxes and employment taxes that he owed. Although he

admitted that he had had issues with the Internal Revenue Service in the 1980s and early 1990s, he claimed that he was not aware of any pending IRS issues.

{¶ 7} In addition to respondent's banking irregularities, the parties have stipulated that respondent ceased to carry professional-malpractice insurance as of April 1, 2009. They have also stipulated that he did not begin informing his clients about his uninsured status until sometime in February 2010.

{¶ 8} Based on these facts, the parties have stipulated, the panel and board have found, and we agree that respondent has violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients separate from the lawyer's own property), 1.15(b) (permitting a lawyer to deposit his or her own funds in a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), 1.4(c) (requiring a lawyer to inform the client in a writing signed by the client if the lawyer does not maintain professional-liability insurance), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).[1]

### Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and

---

1. Although relator's complaint did not charge respondent with a violation of Prof.Cond.R. 8.4(c), we have previously recognized that a respondent's review of and consent to stipulated facts and the stipulated violations, and his waiver of a hearing, satisfied the due-process requirements of *In re Ruffalo* (1968), 390 U.S. 544, 550-551, 88 S.Ct. 1222, 20 L.Ed.2d 117. See *Disciplinary Counsel v. Jackson* (1999), 86 Ohio St.3d 104, 105, 712 N.E.2d 122. Here, respondent stipulated to the facts and violation and received a hearing.

Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 10} The panel and board found that respondent's dishonest motive was an aggravating factor. See BCGD Proc.Reg. 10(B)(1)(b). As mitigating factors, the panel and board cited respondent's lack of a prior disciplinary record, his full and free disclosure and cooperative attitude toward the disciplinary proceeding, and the fact that no clients were harmed. BCGD Proc.Reg. 10(B)(2)(a) and (d).

{¶ 11} The panel and board also observed that respondent had submitted "compelling testimony" from Kathy King, a magistrate of the Hamilton County Domestic Relations Court, regarding his integrity and honesty. The panel discounted this testimony in light of respondent's admission that his use of the ABC Company checking account was deceitful and recommended that respondent be suspended from the practice of law for 12 months, with six months stayed on conditions. The board, however, gave greater weight to King's testimony, which recounted respondent's history of public service, beginning in law school and continuing throughout his 30 years of practice, including his participation in projects and investments designed to strengthen Cincinnati's low-income community. Therefore, the board recommended that respondent's entire 12-month suspension be stayed on conditions.

{¶ 12} "Dishonest conduct on the part of an attorney generally warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Rooney*, 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 12, citing *Disciplinary Counsel v. Beeler*, 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44, and *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237. We acknowledge respondent's extensive work with the poor, including his full-time volunteer work with the public defender's office after he graduated from law school, the investment of his inherited wealth in the rehabilitation of buildings and social service agencies in the inner-city

4

neighborhood of Over-the-Rhine, and his dedication to the poor and disadvantaged people of that area. These good works, however, do not excuse respondent's complete disregard of the Rules of Professional Conduct requiring attorneys to maintain client funds separate from their own and to maintain detailed records of all funds received on behalf of a client. Nor do they compensate for his deceptive course of conduct that spanned more than five years.

{¶ 13} Having considered respondent's conduct, the aggravating and mitigating factors, and our precedent, we conclude that the appropriate sanction for respondent's misconduct is a 12-month suspension, with six months stayed on the conditions that he serve six months of monitored probation in accordance with Gov.Bar. V(9) and that he commit no further misconduct.

{¶ 14} Accordingly, we suspend respondent from the practice of law in Ohio for 12 months, with six months stayed on the conditions that he serve six months of supervised probation with a monitor appointed by relator in accordance with Gov.Bar R. V(9) and that he commit no further misconduct. If respondent fails to comply with the conditions, the stay will be lifted, and he will serve the entire 12-month suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

James K. Rice and Richard H. Johnson, for relator.

John H. Burlew, for respondent.

_____