DISCIPLINARY COUNSEL *v.* DOCKRY.

[Cite as *Disciplinary Counsel v. Dockry,* **133 Ohio St.3d 527, 2012-Ohio-5014.**]

*Attorney misconduct, including failing to hold client funds in an interest-bearing account, separate from the attorney's funds; failing to perform a monthly reconciliation of the funds held in the trust account; and failing to maintain a record for each client on whose behalf funds are held—One-year suspension, stayed on conditions.*

(No. 2012-0287—Submitted May 22, 2012—Decided October 31, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-044.

_____

**Per Curiam**.

{¶ 1} Respondent, Michael Brian Dockry of Youngstown, Ohio, Attorney Registration No. 0002845, was admitted to the practice of law in Ohio in 1982. On April 11, 2011, relator, disciplinary counsel, filed a complaint alleging that Dockry had committed professional misconduct by depositing and maintaining personal funds in his client trust account, using that account to pay his personal and business expenses, borrowing client funds from the account for his personal use, failing to maintain ledgers of the client funds held in that account, and failing to reconcile the account.

{¶ 2} The parties submitted stipulations of fact and agreed that Dockry's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold client funds in an interest-bearing client trust account, separate from the lawyer's own funds), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), and 1.15(a)(5) (requiring a lawyer to perform a monthly reconciliation of the funds held in the lawyer's client trust account and to retain

evidence of the reconciliation). Dockry, however, contested allegations that his conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) as alleged in the complaint.

{¶ 3} A panel of the Board of Commissioners on Grievances and Discipline conducted a hearing at which it heard Dockry's testimony and admitted the parties' stipulations, 16 stipulated exhibits, and 25 exhibits offered by Dockry. The panel issued a report finding that Dockry committed all of the charged misconduct and recommending that he be suspended from the practice of law for one year, with six months stayed on the conditions that he serve one year of monitored probation and engage in no further misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 4} Dockry objects to the recommended sanction and argues that a six-month suspension stayed on conditions will adequately protect the public from any further misconduct. We adopt the board's findings of fact and misconduct. However, for the reasons that follow, we sustain Dockry's objection in part and impose a one-year suspension, all stayed on the conditions recommended by the board.

**Misconduct**

{¶ 5} The board, based upon the parties' stipulations, the exhibits presented, and Dockry's testimony at the hearing, made the following finding of facts. Dockry began his solo practice in 1982 and has maintained a client trust account at PNC Bank and its predecessor, National City Bank, since 1983. Though he continuously maintained a personal checking account beginning in 1982, he did not open an operating account for his law practice until November 2010.

**{¶ 6}** Since February 1, 2007, Dockry has handled cases on an hourly fee basis and deposited the fee advances received from his clients into his client trust account. He has also always deposited and maintained personal funds in his client trust account beyond the amount permitted by Prof.Cond.R. 1.15(b), which allows lawyers to deposit their own funds in a client trust account for the sole purpose of paying bank fees or obtaining a waiver of bank fees. For example, in April 2009, he deposited $212 of his personal funds into his client trust account, and in May 2010, he deposited $3,035.24 of his personal funds. Dockry estimated that typically 75 percent of the funds held in his client trust account belonged to his clients.

**{¶ 7}** Dockry also used his client trust account to pay his personal and business expenses, including his office rent and telephone service, his personal membership dues for the Austintown Kiwanis Club, and his family's medical expenses.

**{¶ 8}** On one occasion, in April 2009, Dockry wrote a $2,000 trust-account check to himself to cover a deficiency in his personal checking account. He returned the funds to his trust account two days later, noting on the check that the funds had been a loan. The board found that Dockry also loaned $300 to a friend from personal funds that Dockry had improperly maintained in his client trust account and that he later reimbursed the account for the loan with personal funds.[1] In addition, the board found that from February 1, 2007, to early 2010, Dockry did not maintain ledgers of the client funds held in his client trust account and did not properly reconcile the account.

**{¶ 9}** The parties stipulated and the board found that the conduct described above is consistent with the way Dockry used his client trust account

---

1. Dockry also stipulated that in February 2010, he issued a check from his client trust account that exceeded his personal funds in the account. He reimbursed the account the following month. Relator did not amend the complaint to charge any violations related to this conduct.

from February 2007 until the commencement of relator's investigation of this matter.

{¶ 10} The board found that Dockry's conduct violated Prof.Cond.R. 1.15(a), 1.15(a)(2), 1.15(a)(5), 8.4(c), and 8.4(h) as charged in relator's complaint. We adopt the board's findings of fact and misconduct.

**Sanction**

{¶ 11} In recommending a sanction, the panel and board considered the ethical duties that respondent had violated, the applicable aggravating and mitigating factors listed in BCGD Proc.Reg. 10, and the sanctions imposed in similar cases. *See, e.g.*, *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16; *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} The board adopted the parties' stipulated factors in mitigation— absence of a prior disciplinary record, payment of restitution, cooperation with the disciplinary proceedings, and good character and reputation apart from the charged misconduct. BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). The board adopted the sole stipulated aggravating factor—that Dockry's conduct was motivated by a dishonest or selfish motive, BCGD Proc.Reg. 10(B)(1)(b).

{¶ 13} Relator argues that the appropriate sanction for Dockry's misconduct is a one-year suspension with six months stayed on the condition that Dockry serve one year of monitored probation. Dockry, however, argues that a six-month fully stayed suspension coupled with a period of monitored probation will adequately protect the public.

{¶ 14} The board noted that in *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, ¶ 3-6, 10, we imposed an indefinite suspension on an attorney who used his client trust account to pay business and personal expenses; failed to maintain client ledgers, records, or receipts showing the source of some of the funds deposited into the account; and overdrew the

4

account 19 times in the span of three years. But in contrast to the court's findings in *Wise*, the board found that Dockry had not overdrawn his client trust account multiple times, had no prior disciplinary violations, and had cooperated in relator's investigation. Therefore, the board adopted relator's recommendation that Dockry be suspended from the practice of law for one year with six months stayed on the conditions that he serve one year of monitored probation and commit no further misconduct.

{¶ 15} Dockry objects to the recommended sanction, arguing that a six-month fully stayed suspension on the conditions recommended by the board will adequately protect the public from future misconduct. In support of this argument, he cites a number of cases in which we have imposed fully stayed suspensions on attorneys who have engaged in comparable misconduct with respect to their client trust accounts.

{¶ 16} In *Disciplinary Counsel v. Vivyan*, 125 Ohio St.3d 12, 2010-Ohio-650, 925 N.E.2d 947, ¶ 4, 14, we imposed a six-month, fully stayed suspension on an attorney who over a period of approximately one month withdrew $1,535 in unearned funds from his client trust account and used those funds for personal expenses in violation of Prof.Cond.R. 1.15(a), 1.15(b), and 1.15(c) (requiring lawyers to deposit into client trust account advances to be withdrawn only when earned). In determining that a fully stayed suspension was the appropriate sanction, we relied on a number of cases involving attorney use of client trust accounts for personal and/or business expenses. *Vivyan* at ¶ 8-12, citing *Disciplinary Counsel v. Fletcher*, 122 Ohio St.3d 390, 2009-Ohio-3480, 911 N.E.2d 897 (imposing a six-month stayed suspension on an attorney who used his client trust account for personal and business expenses for approximately five years); *Disciplinary Counsel v. Johnston*, 121 Ohio St.3d 403, 2009-Ohio-1432, 904 N.E.2d 892 (imposing a one-year stayed suspension on an attorney who commingled personal funds with client funds for nearly two years while using his

client trust account for operating and personal expenses); *Cuyahoga Cty. Bar Assn. v. Nance*, 119 Ohio St.3d 55, 2008-Ohio-3333, 891 N.E.2d 746 (imposing a six-month stayed suspension on an attorney who engaged in conduct that adversely reflected on his fitness to practice law by using his client trust account to pay personal and business expenses and overdrawing the account on at least one occasion); *Columbus Bar Assn. v. Peden*, 118 Ohio St.3d 244, 2008-Ohio-2237, 887 N.E.2d 1183 (imposing a six-month stayed suspension on an attorney who overdrew his client trust account nine times in a two-year period, failed to maintain a client trust account for several months, and occasionally deposited unearned fees in his office operating account); and *Disciplinary Counsel v. Newcomer*, 119 Ohio St.3d 351, 2008-Ohio-4492, 894 N.E.2d 50 (imposing a six-month stayed suspension on an attorney who used his client trust account for his personal banking needs after his bank closed his personal account for reasons related to his poor financial condition).

**{¶ 17}** Although some of the attorneys in the cases cited by Dockry were found to have engaged in conduct adversely reflecting on their fitness to practice law, *see, e.g.*, *Johnston* at ¶ 10; *Peden* at ¶ 4; *Nance* at ¶ 3; *Newcomer* at ¶ 4, none of them were charged with dishonesty, fraud, deceit, or misrepresentation for his misconduct, as Dockry was. And it is that distinction that relator argues requires Dockry to serve an actual suspension from the practice of law.

**{¶ 18}** "Generally, misconduct involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16, citing *Disciplinary Counsel v. Kraemer*, 126 Ohio St.3d 163, 2010-Ohio-3300, 931 N.E.2d 571, ¶ 13; and *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. However, we have imposed a fully stayed suspension on at least one occasion when an attorney engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. In *Disciplinary*

6

*Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, the attorney deposited $16,000 of his personal funds into his client trust account and told his clients that the money was from settling their case. The case had actually been dismissed two years earlier following the attorney's failure to respond to motions for summary judgment. *Id.* at ¶ 5-7, 18. He also failed to promptly return a client's legal documents on request. *Id.* at ¶ 8. We found that his conduct violated DR 1-102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 9-102(A) (requiring a lawyer to deposit all client funds in one or more identifiable bank accounts and to keep the funds separate from the lawyer's own property), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds and property to which a client is entitled). *Id.* at ¶ 9. Finding that there were no aggravating factors and that there were multiple mitigating factors, including the absence of a prior disciplinary record, the respondent's payment of restitution, his cooperation in the disciplinary process, his excellent character and reputation, and the absence of a motive to exploit his clients, we imposed a one-year fully stayed suspension. *Id.* at ¶ 16-18.

{¶ 19} Despite our holding in *Fumich*, relator argues that a one-year suspension with six months stayed is appropriate here. He argues that that sanction is in line with the sanctions that we imposed for conduct comparable to Dockry's in *Cincinnati Bar Assn. v. Hauck*, 129 Ohio St.3d 209, 2011-Ohio-3281, 951 N.E.2d 83, and *Disciplinary Counsel v. Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980.

{¶ 20} For more than five years, Hauck commingled his personal and business funds in a bank account that also contained client funds, and he did so to avoid overdraft charges and to avoid tax garnishments by the Internal Revenue

Service. *Hauck* at ¶ 4, 6. The account was not truly a client trust account, as it belonged to a nonprofit entity that Hauck had formed. The printed checks for the account were deceptive because they did not name the nonprofit entity and instead bore Hauck's name, followed by "Attorney at Law" and "IOLTA" (interest on lawyers' trust accounts). *Id.* at ¶ 5. During the course of his deception, Hauck stopped payment on a $2,800 check he had issued to a client, representing the proceeds of the client's personal-injury claim, because the account did not contain sufficient funds. *Id.* at ¶ 3. For this pattern of deceptive conduct, we imposed a one-year suspension with six months stayed on the conditions that Hauck serve six months of monitored probation and that he commit no further misconduct. *Id.* at ¶ 14.

{¶ 21} Riek, like Hauck, commingled personal and client funds in his client trust account. For almost one year, Riek paid personal expenses directly from the account, and he overdrew the account on four occasions. *Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980, at ¶ 4. He used settlement funds in the account that were due to a client to pay his personal expenses, which caused a $2,875.60 check issued to the client to be dishonored by the bank. *Id.* at ¶ 6-7. When the client inquired about the dishonored check, Riek falsely represented that the settlement check Riek had received had been dishonored. *Id*. at ¶ 7.

{¶ 22} Although Dockry did misappropriate client funds from his client trust account, as Hauck and Riek did, he did not make affirmative misrepresentations to his clients, as Hauck and Riek did. Nor did he issue checks to clients when there were not sufficient funds in the bank to cover them. Thus, even though Dockry engaged in dishonesty, fraud, deceit, or misrepresentation by taking an unauthorized loan from his client trust account, we find that his conduct is more comparable to that of Vivyan, Fletcher, Johnston, and Fumich.

{¶ 23} We find that the numerous mitigating factors in this case, including the absence of a prior disciplinary record in nearly 30 years of practice, the

prompt payment of restitution, Dockry's full cooperation in these disciplinary proceedings, and his good character and reputation in the community, outweigh the sole aggravating factor—a dishonest or selfish motive, which relates solely to Dockry's unauthorized borrowing of client funds (money he paid back two days after borrowing it). Moreover, there has been no harm to Dockry's clients.

{¶ 24} Dockry testified that his practice is limited to five or ten hours a week due to his full-time employment as an Austintown Township administrator and that he has only three to five clients at any given time. He handles evictions for a property-management company, but the majority of his clients retain him to probate estates and prepare wills and powers of attorney. Notably, Walter Terlecky, the president of Dockry's largest client, submitted a letter praising Dockry's character and integrity over the course of their 20-year working relationship and stating that his company intends to continue that relationship despite Dockry's violation of the Rules of Professional Conduct.

{¶ 25} Since relator initiated his investigation of Dockry's trust-account practices, Dockry has taken corrective measures to ensure that he does not repeat his past mistakes. He watched a webcast sponsored by relator that explained the proper use of a client trust account, and he has stopped depositing personal funds into his client trust account. He has also studied the Rules of Professional Conduct and begun to maintain client ledgers and a general ledger that he reconciles with his bank statement each month.

{¶ 26} Based upon the facts of Dockry's misconduct, the presence of significant mitigating factors, and our precedent, we believe that a one-year suspension stayed on the conditions that Dockry submit to one year of monitored probation and commit no further misconduct will adequately protect the public.

{¶ 27} Accordingly, we sustain Dockry's objection in part and suspend him from the practice of law in Ohio for one year, all stayed on the conditions that he satisfactorily complete one year of monitored probation in accordance with

Gov.Bar R. V(9) and that he commit no further misconduct. If Dockry fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to Dockry.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Philip A. King, Assistant Disciplinary Counsel, for relator.

John B. Juhasz, for respondent.

_____