**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Eichenberger,* **Slip Opinion No. 2016-Ohio-3332.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3332

DISCIPLINARY COUNSEL *v*. EICHENBERGER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Eichenberger,* Slip Opinion No. 2016-Ohio-3332.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Two-year suspension with one year stayed on condition.*

(No. 2015-1315—Submitted December 16, 2015—Decided June 14, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-045.

_____

**Per Curiam.**

{¶ 1} Respondent, Raymond Leland Eichenberger III of Reynoldsburg, Ohio, Attorney Registration No. 0022464, was admitted to the practice of law in Ohio in 1980. In a June 2014 complaint, relator, disciplinary counsel, charged Eichenberger with professional misconduct arising from an overdraft of his client

trust account, his use of his client trust accounts as a personal bank account, and his failure to cooperate in the resulting disciplinary investigation.

{¶ 2} The parties entered into stipulations of fact and mitigation and submitted 27 stipulated exhibits to the panel of the Board of Professional Conduct assigned to hear the case. Based on those stipulations and Eichenberger's testimony, the panel found that he failed to hold client funds in a trust account separate from his own property, he knowingly failed to respond to a demand for information by a disciplinary authority, he engaged in dishonesty, fraud, deceit, or misrepresentation, and his conduct was prejudicial to the administration of justice. The panel therefore recommended that Eichenberger be suspended from the practice of law for two years with one year stayed.

{¶ 3} The board adopted the panel's findings of fact, misconduct, and aggravating and mitigating factors but recommended that Eichenberger be suspended from the practice of law for two years with no stay and that certain conditions be placed on his reinstatement.

{¶ 4} Eichenberger objects to the board's findings of fact and misconduct, arguing that they are not supported by the evidence and that relator violated his constitutional rights to due process and equal protection under the law by failing to give him notice of a subpoena that relator had issued for his banking records. He also objects to the board's recommended sanction. We overrule these objections and adopt the board's findings of fact, misconduct, and aggravating and mitigating factors. Nonetheless, we conclude that a two-year suspension with one year stayed, as recommended by the panel, is the appropriate sanction for Eichenberger's misconduct.

**Misconduct**

{¶ 5} On May 9, 2013, relator received a notice from PNC Bank that there had been an overdraft of Eichenberger's client trust account on May 2, 2013. The notice identified a $1,275.68 debit by "PAYDAYADV CASHNETUSA" as the

2

cause of the overdraft and stated that the item had been returned with no charge. The following month, relator sent Eichenberger a letter inquiring about the overdraft and requesting copies of the monthly statements for his client trust account for the month before the overdraft, the month of the overdraft, and the month after the overdraft—i.e., the April, May, and June 2013 statements.

{¶ 6} Eichenberger submitted a written response in which he stated that the overdraft was the result of an unauthorized attempt to make a withdrawal from an inactive account that he was in the process of closing. He advised relator that he had opened a new client trust account at the same bank in March 2013 and provided only the first page of the March 2013 statement for that new account.

{¶ 7} In a second letter of inquiry, relator requested additional information and reiterated his request for the April, May, and June 2013 bank statements for the account affected by the overdraft. Eichenberger responded, stating in part, "I would once again emphasize to you, and state that you are missing the point, because, 1) this was a fraudulent and unauthorized transaction on an old account that was not even being used at the time, and 2) virtually all of the funds in my trust account at any given time are retainers being earned by me and not client funds." He also enclosed a copy of a letter he wrote to his bank on March 13, 2013, to report a fraudulent and unauthorized check in the amount of $30 and a photocopy of a portion of an April 30, 2013 bank statement for his former client trust account in which the Automated Clearing House ("ACH") portion of the statement was blank.

{¶ 8} Relator's third letter of inquiry requested a more detailed explanation of the transaction that caused the May 2013 overdraft, client ledgers documenting the April 2013 activity for his new client trust account, and information regarding ACH deductions that had been redacted from the partial bank statement he had previously provided. Relator also requested additional bank statements and client ledgers for the new client trust account and informed Eichenberger that if he did

not provide the requested information, relator would consider issuing a subpoena for the bank records of both accounts.

{¶ 9} In his response to relator's third letter of inquiry, Eichenberger stated:

> As th[e] transaction [that caused the May 2013 overdraft] was not initiated by me, in the way of writing a check or personally initiating a withdrawal, it is very unfair to attempt to blame the situation on me, or to attempt to state that I caused a deficiency in the bank account balance.
>
> * * *
>
> The fact that the account was, for all practical purposes closed and dormant at the time of this occurrence, also makes your inquiry more than a little silly.

He declined to provide bank statements for the new trust account, because there were no allegations of wrongdoing with respect to that account, and stated, "I find your threats to subpoena my bank records to be totally out of line and offensive. The authority of your office in this simple and easily explained matter surely can not extend to such overly broad and invasive limits."

{¶ 10} Thereafter, relator subpoenaed two years of bank records of Eichenberger's client trust accounts, which showed that he had issued more than 200 checks and authorized electronic debits for personal and business expenses from those accounts. While Eichenberger issued some checks to himself, numerous checks were issued to utility companies, various retailers, a storage facility, the landlord for his law office, and a racing stable that Eichenberger owned. There were checks for golf trips as well as tickets to a golf tournament and to the symphony. Eichenberger paid his 2012 federal and state income taxes, issued

checks and monthly electronic debits for life-insurance premiums, and made a partial payment for his malpractice insurance—all from his client trust accounts.

{¶ 11} On April 1, 2014, relator wrote to Eichenberger and asked him to explain his use of his client trust accounts for personal transactions. In his response, Eichenberger stated:

> I repeat that the funds in my trust account are uniformly almost always retainers that have been or will be earned quickly, and that the funds belong to me personally.
>
> The funds are never withdrawn from the account until they are due and payable to me.
>
> Therefore, the transactions that you mention in your letter are draws of my earned fees, and involve my personal income to use as I see fit.

{¶ 12} The board found by clear and convincing evidence that Eichenberger improperly used his client trust accounts for personal and nonclient-related business expenses—engaging in more than 200 improper transactions between September 2012 and October 2013—and that this conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from his own property). Based on his repeated and consistent refusals to provide copies of his client-trust-account records during both the investigative and litigation phases—even after the panel chair ordered him to produce information and recommended that this court find him in contempt for his failure to produce requested documents—the board found that Eichenberger also

violated Prof.Cond.R. 8.1(b) and former Gov.Bar R. V(4)(G)[1] (both requiring a lawyer to cooperate with a disciplinary investigation).

{¶ 13} In addition, the board found that Eichenberger repeatedly made material misrepresentations in his correspondence with relator in a deceptive and willful effort to conceal the irregularities in his client trust accounts. The board also found that he altered bank statements that he provided to relator by intentionally and deceptively redacting incriminating information in an effort to conceal transactions that he knew were inappropriate. Because the redacted information was in the middle of the page and affected only data that was damaging to his claims, the board was not persuaded by Eichenberger's claims that the omission was the result of a copy error. The board also found that even after the redaction came to light, Eichenberger took no action to rectify the situation and showed no remorse for his intentional and willful alteration of records. The board therefore found that Eichenberger's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Moreover, the board found that Eichenberger's lack of cooperation was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 14} Eichenberger objects to the board's findings of fact and misconduct on two grounds. He first argues that the board should have dismissed the complaint because relator failed to notify him that a subpoena had been issued to his bank to obtain his client-trust-account records and that this key evidence was therefore

---

[1] Effective January 1, 2015, the provisions previously set forth in Gov.Bar R. V(4)(G) are codified in Gov.Bar R. V(9)(G). 140 Ohio St.3d CXIX.

6

obtained in violation of his constitutional rights to due process and equal protection under the law.

**{¶ 15}** Eichenberger does not challenge relator's authority to issue a subpoena for his trust-account records before filing disciplinary charges against him. He does not identify any statute or rule that would require relator to provide him with notice that such a subpoena had issued. Nor does he acknowledge that Board of Professional Conduct of the Supreme Court of Ohio Procedural Regulation ("BPCSC Proc.Reg.") 6(A) provides: "A subpoena shall be issued upon application of the special investigator, respondent, or authorized representative of the relator and submission of a praecipe to the director. A notice of subpoena is not required to be issued to the respondent unless probable cause has been found."

**{¶ 16}** Instead, Eichenberger broadly asserts that the Fifth and Fourteenth Amendments to the United States Constitution require a disciplinary authority to give an attorney notice and an opportunity to be heard when the authority issues a subpoena for the attorney's bank records—even if the subpoena is issued before probable cause has been found.

**{¶ 17}** But not all governmental actions require the procedural safeguards of a judicial hearing. The Supreme Court of the United States has recognized that due process is an elusive concept with boundaries that vary according to the specific factual context to which it is applied. *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). While acknowledging that adjudicative proceedings that result in binding determinations affecting the legal rights of individuals require procedures traditionally associated with the judicial process, the court noted that it has not required the full panoply of judicial procedures in the context of administrative investigations. *Id.*

**{¶ 18}** The court reinforced this principle in *Secs. & Exchange Comm. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984), when it held that the Securities and Exchange Commission was not required to provide

notice to the target of an investigation upon issuing to third parties subpoenas for information. In reaching that conclusion, the court determined that no statute or rule required the commission to give notice. *Id.* at 741, 744-745. The court also considered and rejected various constitutional arguments raised by the target of the investigation at issue, finding that (1) the issuance of a subpoena to a third party does not compel the target of the investigation to be a witness against himself in violation of the Self-Incrimination Clause of the Fifth Amendment, *id.* at 742, citing *Fisher v. United States*, 425 U.S. 391, 397, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *Couch v. United States*, 409 U.S. 322, 328-329, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); (2) the target of an administrative investigation cannot invoke the Fourth Amendment to protect information or records that the target has conveyed to a third party (even if there was an understanding that the communication was to be confidential) if the third party later conveys the information or records to law-enforcement authorities, *Jerry T. O'Brien, Inc.* at 743, citing *United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct.1619, 48 L.Ed.2d 71 (1976); (3) the Due Process Clause is not implicated when an administrative agency subpoenas evidence without notifying the target because an administrative investigation adjudicates no legal rights, *Jerry T. O'Brien, Inc.* at 742, citing *Hannah* at 440-443; and (4) the Confrontation Clause does not apply until criminal proceedings are initiated, *Jerry T. O'Brien, Inc.* at 742, citing *Hannah* at 440, fn. 16.

{¶ 19} Here, relator issued an investigative subpoena for bank records regarding Eichenberger's client trust accounts before relator filed a formal complaint and sought a probable-cause finding from the board. As such, relator's conduct occurred in the scope of an investigation rather than in an adjudicative proceeding. Thus, on the authority of *Hannah* and *Jerry T. O'Brien, Inc.*, we conclude that relator did not impinge on Eichenberger's constitutional right to procedural due process by failing to provide him with contemporaneous notice that he had issued a subpoena for bank records concerning Eichenberger's client trust

accounts. We conclude that Eichenberger's equal-protection claim also lacks merit because at the time relator subpoenaed his banking records, he was not similarly situated to other attorneys already formally charged with ethical violations—persons who would be entitled to notice of subpoenas issued at the relator's request by virtue of their status as parties to an adjudicative proceeding. *See Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913, ¶ 19, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (" 'The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike' ").

**{¶ 20}** Next, Eichenberger contends that relator failed to establish by clear and convincing evidence that he engaged in the charged misconduct, because the board's findings were based primarily on allegations that he wrote client-trust-account checks to third parties to pay personal expenses for himself and the operation of his law office. He argues that those checks were paid with earned fees—not client funds—and that because the checks could have properly been issued directly to him, relator failed to prove by clear and convincing evidence that he commingled personal and client funds. He further contends that relator presented no evidence that he intentionally altered his bank records and that his zealous representation of his own interests did not rise to the level of a failure to cooperate in the disciplinary proceedings.

**{¶ 21}** We find these arguments to be without merit. There is ample evidence in the record to show that Eichenberger improperly commingled personal and client funds in his client trust accounts. The evidence shows that he deposited personal funds into his client trust accounts. It also shows that he carried blank client-trust-account checks in his pocket at all times to cover incidental personal expenses and that on some occasions, he issued those checks without consulting

anything but his own memory to determine whether the account contained sufficient earned fees to cover the checks.

**{¶ 22}** And although Eichenberger testified that the redaction of his bank statement was nothing more than a copy error, the panel did not find that testimony to be credible. In light of Eichenberger's false statements that the debit that caused the overdraft was "fraudulent and unauthorized"—when the evidence demonstrated that it was actually an authorized electronic payment of his payday loan—and his repeated refusal to comply with relator's requests for information, the record does not weigh heavily against the panel's credibility determination. Nor does the record support Eichenberger's claim that his actions were the result of zealous self-representation rather than recalcitrance. Therefore, we defer to the panel's credibility determination and overrule Eichenberger's objection in this regard. *See, e.g.*, *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, citing *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8.

**{¶ 23}** Having overruled Eichenberger's objections, we adopt the board's findings of fact and misconduct in this case.

### Sanction

**{¶ 24}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 25}** As aggravating factors in this case, the panel found that Eichenberger acted with a dishonest or selfish motive, demonstrated a pattern of misconduct, committed multiple offenses, showed a lack of cooperation in the disciplinary process, submitted false evidence and statements regarding his

10

misconduct, and engaged in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (5), and (6). And although not charged in relator's complaint, the panel attributed aggravating effect to Eichenberger's conduct displaying a clear disregard for Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), and 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and canceled checks, if provided by the bank, for each bank account). The panel found that despite relator's repeated requests, Eichenberger produced no records to demonstrate any attempt at compliance with these rules.

{¶ 26} The only mitigating factor found by the panel was that Eichenberger did not have a prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1).

{¶ 27} In determining the appropriate sanction for Eichenberger's misconduct, the panel found *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313, and *Disciplinary Counsel v. Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980, to be instructive.

{¶ 28} Dockry deposited personal funds into his client trust account, used the account to pay personal and business expenses, and borrowed client funds from the account to cover a deficiency in his personal checking account. *Dockry* at ¶ 6-8. He also failed to maintain required records regarding the client funds he held and failed to properly reconcile his client trust account. *Id.* at ¶ 8. We found that although Dockry acted with a dishonest or selfish motive, *see* former BCGD Proc.Reg. 10(B)(1)(b), he did not have a prior disciplinary record, made restitution, cooperated with the disciplinary proceedings, and presented evidence of his good character and reputation apart from the charged misconduct, *see* former BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). *Dockry* at ¶ 23. Citing the abundance of

mitigating factors and the relative absence of aggravating factors, we suspended Dockry for one year but stayed the entire suspension on the conditions that he submit to one year of monitored probation and commit no further misconduct. *Id.* at ¶ 26-27.

{¶ 29} Like Eichenberger and Dockry, Riek commingled personal and client funds in his client trust account, paid his personal expenses directly from the account, and overdrew it on four occasions. *Riek* at ¶ 4. After depositing a settlement check made payable to one of his clients, Riek used the majority of the proceeds to pay himself and various personal expenses, causing a check he issued to the client to be dishonored. *Id.* at ¶ 6-7. But Riek's misconduct was more serious than that of Dockry, because he also lied to the client about the reason the check was dishonored, *id.* at ¶ 7. Based on his misconduct, the presence of several mitigating factors, and the absence of any aggravating factors, we suspended Riek for 18 months with 12 months stayed on the condition that he commit no further misconduct. *Id.* at ¶ 11 and 14.

{¶ 30} Noting that Eichenberger's misconduct involved not only the inappropriate use of his client trust account but also his deliberate and systematic attempts to deceive relator through noncooperation, deception, and fraud, the panel found his conduct to be more egregious than that of both Dockry and Riek. The panel therefore recommended that we suspend Eichenberger from the practice of law for two years with one year stayed, that he be assigned a mentor to provide oversight of his client trust account, and that he be required to attend a continuing-legal-education ("CLE") course on law-firm financial management.

{¶ 31} The board, however, rejected the panel's recommended sanction in favor of a two-year suspension with no stay while also including the requirements recommended by the panel. The board states that its recommendation is based on (1) Eichenberger's "failure for nearly 35 years of practice to adhere to the requirements for maintaining separation between his personal funds and funds

belonging to his clients," (2) his "deceptive and deceitful action of altering bank records provided to Relator in an attempt to conceal inappropriate transactions," (3) "positions taken by him during the disciplinary proceedings that are clearly without merit and contrary to the requirements of the Rules of Professional Conduct," (4) "his failure to appreciate or acknowledge the wrongfulness of his misconduct," and (5) "his repeated and flagrant disregard for his duty to cooperate in the disciplinary proceedings."

**{¶ 32}** In support of this recommendation, the board cites *Cleveland Metro. Bar Assn. v. Gruttadaurio*, 136 Ohio St.3d 283, 2013-Ohio-3662, 995 N.E.2d 190. We found that Gruttadaurio placed into his business and personal bank accounts a client fee he had received pursuant to a flat-fee arrangement and that he also neglected the client's legal matter, failed to return the unearned portion of his fee after the client terminated his representation, failed to disclose that he did not maintain professional liability insurance, and made false statements about his conduct to the relator's investigator. Finding that his conduct was most analogous to that of attorneys who have taken their clients' money, failed to perform promised legal work, and then failed to cooperate in the resulting disciplinary investigation, we indefinitely suspended him from the practice of law. *Id.* at ¶ 50-51.

**{¶ 33}** Eichenberger objects to the board's recommended sanction and argues that he should receive no more than a public reprimand for his misconduct, because the checks he wrote to third parties from his client trust account represented earned fees, there is no evidence that any clients were harmed by his actions, and he has had no other disciplinary violations in his 35 years of practice.

**{¶ 34}** We do not find Eichenberger's argument persuasive given his refusal to cooperate in relator's investigation, as evidenced by his refusal to produce requested and highly relevant documents and his failure to acknowledge his deliberately false and deceptive statements throughout this proceeding. Nor are we persuaded that all of the funds Eichenberger distributed to third parties had been

earned at the time he distributed them given his failure to produce *any* records tending to support his testimony in that regard—records that the Rules of Professional Conduct required him to maintain. Nonetheless, we conclude that the panel's recommended sanction of a two-year suspension with one year stayed, plus the completion of a CLE course on law-firm financial management and a period of monitored probation is the appropriate sanction in this case.

{¶ 35} Accordingly, Raymond Leland Eichenberger III is suspended from the practice of law in Ohio for two years with the second year stayed on the condition that he engage in no further misconduct. If Eichenberger fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. Prior to reinstatement to the practice of law, Eichenberger shall be required to complete a CLE course related to law-office financial management, and upon reinstatement, he shall serve one year of monitored probation in accordance with Gov.Bar R. V(21), to be focused on the management of his client trust account. Costs are taxed to Eichenberger.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., dissent and would not stay any portion of the suspension imposed on respondent.

_____

Scott J. Drexel, Disciplinary Counsel, and Michelle R. Bowman, Assistant Disciplinary Counsel, for relator.

Raymond Leland Eichenberger III, pro se.

_____