**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Trumbull Cty. Bar Assn. v. Dull,* **Slip Opinion No. 2017-Ohio-8774.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8774

TRUMBULL COUNTY BAR ASSOCIATION *v.* DULL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Trumbull Cty. Bar Assn. v. Dull,* Slip Opinion No. 2017-Ohio-8774.]**

*Attorneys—Misconduct—Violations of professional-conduct rules, including misappropriating client funds—Two-year suspension, with second year stayed on conditions.*

(No. 2017-0490—Submitted June 7, 2017—Decided December 5, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-027.

_____

**Per Curiam**.

{¶ 1} Respondent, Joseph Terrence Dull, of Niles, Ohio, Attorney Registration No. 0009288, was admitted to the practice of law in Ohio in 1976. In July 2016, relator, Trumbull County Bar Association, charged him with violating the professional-conduct rules for, among other things, misappropriating funds that

a client had instructed him to invest. Dull stipulated to many of the allegations against him, and after a hearing, the Board of Professional Conduct issued a report finding that he had engaged in the charged misconduct and recommending that we suspend him for one year, with the final six months stayed on conditions. Neither party has objected to the board's report and recommendation.

{¶ 2} Although we agree with the board's misconduct findings, we hold that Dull's actions require a more severe sanction. For the reasons explained below, we suspend him for two years, with the second year stayed on the board's recommended conditions.

## Misconduct

{¶ 3} At the time of his disciplinary hearing, Dull had served for 30 years as the Niles law director. He planned to retire in February 2017. While serving as the law director, he also had a solo practice, which he intended to continue after retiring from public employment.

{¶ 4} In 1996, as part of his private practice, Dull created an investment trust in which his client Joseph S. Scaglione was the grantor and Dull was the trustee. Almost 15 years later, in 2011, Scaglione gave Dull two checks totaling $45,000 and instructed him to invest the money in a Vanguard fund. Dull, however, failed to do so and instead deposited both checks into his client trust account. Because Scaglione received monthly account statements from the investment fund, he discovered that Dull had not invested his money. Due to fluctuating market conditions, Scaglione later instructed Dull to hold off investing the money until conditions improved.

{¶ 5} In 2012, Scaglione asked Dull, as trustee of the investment trust, for $8,000, which Dull paid by check from his client trust account. About three years later, in 2015, Scaglione requested $27,000 to purchase a new car. But Dull informed Scaglione that he no longer had any of the money because he had

2

withdrawn for his own personal use the remaining $37,000 that he had been holding as trustee of the investment trust.

{¶ 6} Scaglione thereafter terminated Dull as trustee and filed a grievance with relator. During the disciplinary proceedings, Dull testified that he had moved his office in 2010 and that overhead for the new space was more than he had anticipated. He admitted that from 2011 to January 2013, he periodically withdrew Scaglione's money from his client trust account to cover his expenses, hoping that he would make enough money to refund the account before Scaglione requested more funds from the trust. Dull also admitted that he had failed to properly maintain client records for his trust account and that he had failed to disclose to Scaglione and other clients that he lacked malpractice insurance. With assistance from family members, Dull refunded $37,000 to Scaglione and paid him an additional $11,550, which represented lost interest and opportunity resulting from Dull's failure to initially invest the money.

{¶ 7} Based on this conduct, the board found that Dull had violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance and obtain a signed acknowledgment of that notice from the client), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 8} We adopt the board's findings of misconduct.

## Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

**{¶ 10}** As aggravating factors, the board found that Dull had had a dishonest or selfish motive, he had engaged in a pattern of misconduct, and his misconduct had been directed at a vulnerable victim, Scaglione, who the board described as a trusting and longtime friend of Dull's. *See* Gov.Bar R. V(13)(B)(2), (3), and (8). In mitigation, the board found that Dull had no prior disciplinary record in his 40-year legal career, he had made full restitution to Scaglione, he had made full and free disclosures to the board and had had a cooperative attitude toward the disciplinary proceedings, and he had submitted evidence of good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (3), (4), and (5). The board also noted that at his disciplinary hearing, he was "absolutely willing to acknowledge the wrongful nature of his conduct."

*Applicable precedent*

**{¶ 11}** "The presumptive sanction for misappropriation of client funds is disbarment." *Disciplinary Counsel v. Burchinal*, 133 Ohio St.3d 38, 2012-Ohio-3882, 975 N.E.2d 960, ¶ 17. But, as recognized by the board, because this sanction "may be tempered with sufficient evidence of mitigating or extenuating circumstances," *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 18, our sanctions in misappropriation cases have ranged from disbarment to fully stayed term suspensions.

**{¶ 12}** After surveying numerous misappropriation cases, the board concluded that neither disbarment nor an indefinite suspension was warranted here. Cases with those sanctions, the board noted, generally involved more serious misconduct, more violations of the professional-conduct rules, an attorney with a prior disciplinary record, a failure to make restitution or failure to cooperate in the disciplinary process, or circumstances in which the aggravating factors clearly outweighed the mitigating factors.

**{¶ 13}** In recommending a sanction, the board relied on three misappropriation cases that it found to be "most comparable" to the present case: *Disciplinary Counsel v. Gorby*, 142 Ohio St.3d 35, 2015-Ohio-476, 27 N.E.3d 510; *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313; and *Cincinnati Bar Assn. v. Hauck*, 129 Ohio St.3d 209, 2011-Ohio-3281, 951 N.E.2d 83. In *Gorby* and *Dockry*, we sanctioned the attorneys with conditionally stayed one-year suspensions, and in *Hauck*, we suspended the attorney for one year, with the final six months stayed on conditions. The board concluded that an actual suspension was necessary here to protect the public because it would give Dull time to become more educated about the proper use of his client trust account. Therefore, the board recommended a one-year suspension with six months conditionally stayed.

**{¶ 14}** Although we agree with the board that neither disbarment nor an indefinite suspension is warranted, we hold that a longer term suspension is necessary. Dull's misconduct was more egregious than the misconduct in *Gorby*, *Dockry*, or *Hauck*. For example, in *Gorby*, an attorney misappropriated approximately $5,500 from her sister and brother-in-law, who she represented at no charge in a foreclosure action. The clients gave her their money with instructions to use the funds only for payment of their mortgage. But after depositing the money into her business checking account, she began using some of the money to pay her own personal and business expenses. The board concluded, however, that she posed little, if any, threat to the public because her misconduct "arose in the context of her very contentious family relationship." *Id.* at ¶ 15. Based on these facts, we found that a fully stayed one-year suspension was sufficient to protect the public. *Id.* at ¶ 27.

**{¶ 15}** In contrast, Dull misappropriated significantly more money, $37,000, over a multiyear period—seemingly because he needed it and the money was available to him. Thus, we do not have the same level of assurance that he will

not engage in future misconduct. Indeed, at his disciplinary hearing, he testified that he had not yet asked his current clients to sign a notice acknowledging that they were aware that he lacked malpractice insurance, despite the fact that relator had charged him with that misconduct seven months before the hearing date. Similarly, he admitted that had not yet commenced retaining the client-trust-account records that Prof.Cond.R. 1.15(a) requires lawyers to maintain.

{¶ 16} Under these circumstances, a two-year suspension with the second year conditionally stayed is more appropriate. This sanction takes into account the significant mitigating factors in this case, gives Dull the necessary time to become more knowledgeable about the professional-conduct rules relevant to private practice, and reinforces our long-held position that the continuing public confidence in the judicial system and the bar requires that strict discipline be imposed in misappropriation cases. *Cleveland Bar Assn. v. Belock*, 82 Ohio St.3d 98, 100, 694 N.E.2d 897 (1998). This sanction is also consistent with other cases involving attorneys who engaged in isolated incidents of misappropriation in otherwise unblemished legal careers. *See, e.g.*, *Disciplinary Counsel v. Claflin*, 107 Ohio St.3d 31, 2005-Ohio-5827, 836 N.E.2d 564 (imposing a two-year suspension, with the second year conditionally stayed, on an attorney who misappropriated a single client's settlement proceeds and lied about it to a grievance investigator but had an otherwise unblemished legal career); *Disciplinary Counsel v. Gildee*, 134 Ohio St.3d 374, 2012-Ohio-5641, 982 N.E.2d 704, ¶ 16 (imposing a two-year suspension, with the second year conditionally stayed, on an attorney who misappropriated funds and engaged in other misconduct in a single client's case but had an "otherwise untarnished legal career").

## Conclusion

{¶ 17} For the reasons explained above, Joseph Terrence Dull is suspended from the practice of law for two years, with the second year stayed on the conditions that he (1) complete a continuing-legal-education course regarding compliance

with the rules regulating client trust accounts within six months of this order, in addition to the requirements of Gov.Bar R. X, and (2) commit no further misconduct. If Dull fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Costs are taxed to Dull.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Flevares Law Firm, L.L.C., and William M. Flevares; and Randil J. Rudloff, Bar Counsel, for relator.

Comstock, Springer & Wilson Co., L.P.A., and Thomas J. Wilson, for respondent.

_____