DAYTON BAR ASSOCIATION *v.* WASHINGTON.

[Cite as *Dayton Bar Assn. v. Washington,*
143 Ohio St.3d 248, 2015-Ohio-2449.]

(No. 2014–2160—Submitted February 4, 2015—Decided June 23, 2015.)

_____

**Per Curiam.**

{¶ 1} Respondent, Cheryl Renee Washington of Dayton, Ohio, Attorney Registration No. 0038012, was admitted to the practice of law in Ohio in 1987. On December 13, 2013, relator, Dayton Bar Association, filed a complaint with the

Board of Commissioners on Grievances and Discipline[1] alleging that Washington had violated 20 Rules of Professional Conduct in representing two separate clients. The parties submitted stipulations of fact and misconduct and recommended that 11 alleged violations be dismissed.

{¶ 2} A panel of the board issued a report incorporating the parties' stipulated findings of fact and recommending that Washington be suspended from the practice of law for six months, all stayed, and serve a period of monitored probation for her violation of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15 (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separate from her own property), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). The panel also unanimously dismissed 16 additional alleged violations based on the insufficiency of the evidence. The board adopted the panel's report in its entirety.

{¶ 3} We adopt the board's findings of fact and misconduct, suspend Washington from the practice of law for six months, all stayed, and order her to serve a one-year period of monitored probation.

## Misconduct

### *The Parker Matter*

{¶ 4} Tynia Parker retained Washington to represent her in a personal-injury matter in January 2007. Washington settled the matter with the full consent of the client for $24,000 in September 2008. Shortly thereafter, she received a $12,335.72 settlement check and deposited it into her firm's operating account. At the time the case was settled, Parker had separated from her husband, and Washington agreed to represent her in her divorce with the understanding that she would receive payment for legal fees and expenses—though she did not have Parker sign a separate fee agreement.

{¶ 5} Although she was obligated to satisfy a subrogation lien out of Parker's settlement proceeds, Washington was able to negotiate a settlement that reduced that payment by approximately $4,000 and satisfied the lien in April 2010. Parker's divorce was finalized in October 2010, and in January 2011, Washington issued a $5,184.30 check drawn on her operating account to Parker, but the bank rejected it for insufficient funds. Upon learning that the check had been

---

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

dishonored, Washington tendered a $7,000 certified check to Parker to cover her bank fees for the dishonored check and to resolve a dispute regarding the fee she had charged for Parker's divorce. On these facts, the board found that Washington had failed to hold Parker's funds in a client trust account separate from her own property in violation of Prof.Cond.R. 1.15.

## The Boone Matter

{¶ 6} In 2007, the probate court of Montgomery County declared Juawawno Boone incompetent and appointed his mother, Sherrill D. Boone, to serve as the guardian of his person. Because Juawawno Boone was going to receive a settlement as part of a nationwide class-action lawsuit, Sherrill Boone retained Washington to create a special-needs trust and to open a guardianship of the estate for Juawawno Boone to avoid jeopardizing his governmental benefits. Washington sought and obtained Sherrill Boone's appointment as the guardian of Juawawno Boone's estate in 2009. Although she disclosed that Juawawno Boone was entitled to receive class-action settlement proceeds of $125,000, she did not seek or obtain the court's approval of the settlement.

{¶ 7} From July 2009 through March 2010, Washington received four settlement checks totaling $170,982.76 on Juawawno Boone's behalf. Rather than placing the settlement proceeds into a separate account that would earn interest for Juawawno Boone's benefit, however, Washington deposited them into her IOLTA trust account, which pays interest to the Legal Aid Fund. Washington admits that, at times, the balance of her client trust account fell below the amount of the settlement proceeds she held for Boone, that she did not maintain a record for each bank account setting forth the balance in the client's account, and that she did not maintain a monthly reconciliation of the items in her client trust account. Washington also acknowledges that she never obtained the probate court's approval for disbursement of the settlement proceeds for Juawawno Boone's benefit.

{¶ 8} In July 2011, Sherrill Boone retained another attorney to assist her with guardianship and trust matters. Washington issued a $75,056.21 check drawn on her trust account payable to "Sherrill Boone, Guardian of Juawawno Boone" on September 1, 2011. When Sherrill Boone presented the check for payment on September 29, 2011, the bank dishonored it for insufficient funds. Washington replaced that check with a cashier's check for the same amount on October 3, 2011.

{¶ 9} The probate court approved Juawawno Boone's class-action settlement in January 2012 and appointed attorney Carl D. Sherrets as the successor trustee of the special-needs trust. Sherrets filed exceptions to the final account filed by Sherrill Boone, claiming that she had not fully accounted for all of the settlement proceeds. Between September and November 2012, Washington issued two

checks to Sherrets for a total of $30,921.25, representing settlement proceeds belonging to Juawawno Boone. An April 1, 2013 entry of the probate court overruled Sherrets's exceptions because the parties. to that proceeding agreed that all funds had been accounted for and that all funds disbursed were used for Boone's benefit.

{¶ 10} The parties stipulated and the board found that Washington's conduct in the Boone matter violated Prof.Cond.R. 1.15(a)(3), 1.15(a)(5), and 1.3.

## Sanction

{¶ 11} In determining what sanction to recommend to this court, the board considered the ethical duties the lawyer violated, the presence of aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B),[2] and the sanctions imposed in similar cases.

{¶ 12} As mitigating factors, the board found that Washington (1) has no prior disciplinary record, (2) made a timely good-faith effort to make restitution and rectify the consequences of her misconduct, (3) demonstrated a cooperative attitude toward the disciplinary proceedings, and (4) established her good character and reputation apart from the charged misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a), (c), (d), and (e). No aggravating factors were found.

{¶ 13} The board acknowledged several cases in which this court imposed public reprimands or fully stayed suspensions on attorneys who engaged in conduct comparable to Washington's. *See, e.g., Toledo Bar Assn. v. Hetzer,* 137 Ohio St.3d 572, 2013-Ohio-5480, 2 N.E.3d 247 (publicly reprimanding an attorney who failed to timely deposit client funds into his client trust account, failed to maintain accurate records of client funds in his possession, and improperly handled funds that he held in escrow for the benefit of a client and the client's spouse); *Cincinnati Bar Assn. v. Helbling,* 124 Ohio St.3d 510, 2010-Ohio-955, 924 N.E.2d 364 (publicly reprimanding an attorney for misconduct including the mishandling of client funds that resulted in an overdraft of his client trust account); *Toledo Bar Assn. v. Royer,* 133 Ohio St.3d 545, 2012-Ohio-5147, 979 N.E.2d 329 (imposing a one-year stayed suspension with a two-year period of monitored probation on an attorney who neglected a client's legal matter, failed to hold unearned fees in his client trust account, and failed to promptly deliver funds or other property that a client was entitled to receive); *Akron Bar Assn. v. Tomer,* 138 Ohio St.3d 302, 2013-Ohio-5494, 6 N.E.3d 1133 (imposing a two-year stayed suspension with a period of monitored probation on an attorney who neglected client matters, mismanaged and made unauthorized withdrawals from

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

her client trust account, and submitted false evidence during the ensuing disciplinary investigation).

{¶ 14} In light of the sanctions imposed in these cases and the parties' belief that a period of monitored probation should be imposed, the board recommends that we suspend Washington from the practice of law for six months, all stayed, and that she be required to serve a period of monitored probation. Having independently reviewed the record, we adopt the board's findings of fact, conclusions of law, and recommended sanction.

{¶ 15} Accordingly, Cheryl Renee Washington is suspended from the practice of law in Ohio for six months, all stayed on the condition that she engage in no further misconduct. Additionally, Washington shall complete a one-year period of monitored probation in accordance with Gov.Bar R. V(21). If Washington fails to comply with the condition of the stay, the stay will be lifted, and she shall serve the full six-month suspension. Costs are taxed to Washington.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Brian L. Wildermuth and Jeffrey A. Hazlett, for relator.

Jonathan Hollingsworth, for respondent.