**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lorain Cty. Bar Assn. v. Nelson,* **Slip Opinion No. 2017-Ohio-8856.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

Slip Opinion No. 2017-Ohio-8856

LORAIN COUNTY BAR ASSOCIATION *v.* NELSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Nelson,* Slip Opinion No. 2017-Ohio-8856.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct and the Rules for the Government of the Bar—Two-year suspension with 18 months stayed on condition.*

(No. 2016-1830—Submitted May 16, 2017—Decided December 7, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-010.

_____

**Per Curiam.**

{¶ 1} Respondent, Kenneth Allen Nelson II, of Avon Lake, Ohio, Attorney Registration No. 0075834, was admitted to the practice of law in 2003. In October 2015, we publicly reprimanded him for neglecting a client's personal-injury case, failing to properly notify the client that he lacked malpractice insurance, and failing

to cooperate in the ensuing disciplinary investigation. *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268.

{¶ 2} In April 2016, relator, Lorain County Bar Association, charged Nelson with mishandling a client's fee in a criminal matter and failing to cooperate in relator's investigation. After a hearing, the Board of Professional Conduct found that Nelson engaged in most of the charged misconduct and recommended that we suspend him for two years, with 18 months stayed on conditions. Nelson objects to most of the board's misconduct findings and to its recommended sanction, arguing that a fully stayed one-year suspension is more appropriate.

{¶ 3} For the reasons explained below, we overrule Nelson's objections and adopt the board's findings of misconduct and recommended sanction.

**Misconduct**

{¶ 4} On May 28, 2015, the federal government charged Efren Vega with a drug-related felony, and the following day, Vega's girlfriend, Linda Sanchez, paid Nelson $10,000 in cash to represent him. At Nelson's disciplinary hearing, he testified that he considered the $10,000 a "flat fee * * * earned on receipt" and that he therefore placed the funds in a lockbox at his house rather than in his client trust account. Nelson admitted that at the time he collected the fee, he failed to advise Vega or Sanchez that if he did not complete the representation, they may be entitled to a refund of all or a portion of the fee. Nelson also failed to advise them that he lacked malpractice insurance.

{¶ 5} Nelson completed some legal work in Vega's case and twice visited him in prison. However, about two weeks after Vega retained him, Vega terminated the representation. Nelson testified that when Vega discharged him, he advised Vega that he would refund the unearned portion of the $10,000 fee after he completed a bill. Similarly, when Sanchez contacted Nelson about a refund, he told her that he would refund a portion of the money upon completion of a bill. But

2

after waiting two months without receiving a refund, Sanchez filed a grievance against him.

{¶ 6} On September 10, 2015, relator sent Nelson a copy of the grievance and requested that he respond within 20 days. Nelson did not respond to relator's letter or to a September 30 follow-up e-mail. On October 5, 2015, relator sent Nelson another letter and e-mail. Although Nelson contacted relator by telephone and indicated that he would respond to the grievance by October 9, he failed to do so. On October 12, relator e-mailed Nelson to remind him that he had agreed to respond to the grievance, but Nelson again failed to reply to relator's inquiry.

{¶ 7} On February 11, 2016, relator notified Nelson of its intent to file a disciplinary complaint, and about a month later, on March 18, Nelson formally responded to Sanchez's grievance. With his response, he submitted an itemized statement of legal services in Vega's case, showing that his fees and expenses amounted to $6,803.50. However, he also stated that in order to resolve the dispute, he had refunded $9,000 to Sanchez, which was the amount that she had requested in her grievance. The parties stipulated that Nelson refunded the money on March 17, the day before he responded to the grievance. At his disciplinary hearing, Nelson conceded that because he did not deposit the $10,000 fee into his client trust account, he failed to comply with the record-keeping requirements for client funds held in trust.

{¶ 8} Based on this conduct, the board found that Nelson violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client on a separate written form that the lawyer does not maintain professional-liability insurance and requiring the client to sign the form), 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt" or in similar terms without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client

trust account), 1.15(a)(1) through (5) (requiring a lawyer to maintain certain client records regarding funds held in a trust account and bank records, as well as to perform and retain monthly reconciliations of the trust account), 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment), and 8.1(b) and Gov.Bar R. V(9)(G) (both requiring an attorney to cooperate with a disciplinary investigation).

{¶ 9} Nelson objects to the board's findings that he mishandled the $10,000 fee and failed to cooperate in the disciplinary investigation. According to Nelson, because he told Vega after Vega discharged him that he would refund the unearned portion of the $10,000, he "effectively gave the notice required by Prof.Cond.R. 1.5(d)(3) to qualify as a 'flat fee' or as a fee 'earned upon receipt.' " And because he "effectively" complied with Prof.Cond.R. 1.5(d)(3), Nelson argues that he was not required to deposit his fee in his client trust account and that his violation of the rules regulating flat fees and a lawyer's trust account should be given "little weight."

{¶ 10} Prof.Cond.R. 1.5(d)(3) prohibits a lawyer from collecting a fee denominated as "earned upon receipt" or in similar terms unless the client is *simultaneously* advised *in writing* that if the lawyer does not complete the representation for any reason, the client may be entitled to a refund of all or a portion of the flat fee. If a lawyer complies with the conditions in Prof.Cond.R. 1.5(d)(3), advance fees collected by the lawyer are considered the lawyer's property and the lawyer should deposit those funds in any place other than his client trust account. *Columbus Bar Assn. v. McCord*, 150 Ohio St.3d 81, 2016-Ohio-3298, 79 N.E.3d 503, ¶ 7; *see* Board of Professional Conduct Advisory Opinion No. 2016-1 (Feb. 12, 2016).

{¶ 11} Nelson, however, did not comply—or "effectively" comply—with the conditions in Prof.Cond.R. 1.5(d)(3). According to Nelson's own testimony, he told Vega at the time Vega discharged him, which was about two weeks *after* he

collected the fee, that he would refund the unearned portion of the $10,000. Further, he did not give notice in writing. He therefore failed to comply with essential elements of the rule. In addition, Nelson admits that when Vega terminated him, a portion of the $10,000 fee was unearned and Vega was entitled to a refund. Yet for the next nine months, Nelson kept his client's funds in a lockbox in his house, rather than in an appropriately safeguarded client trust account as required by Prof.Cond.R. 1.15(c). Thus, the evidence supported the board's findings that Nelson failed to comply with the rules regulating flat fees and client trust accounts.

{¶ 12} Regarding his failure to cooperate, Nelson states that he considered Sanchez's grievance a fee dispute and that he delayed responding to the grievance because he thought that he could settle with her. Nelson's belief that the grievance amounted to a fee dispute, however, did not relieve him of his duty to timely respond to relator's repeated inquiries. *See* Gov.Bar R. V(9)(G). Relator's investigator testified that in September and October 2015, she sent Nelson six inquiries about the grievance. However, he did not formally respond until March 2016. On this record, the board had ample evidence to conclude that Nelson failed to cooperate in relator's investigation.

{¶ 13} We therefore overrule Nelson's objections and agree with the board's findings of misconduct.

## Sanction

{¶ 14} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 15} As aggravating factors, the board found that Nelson has a prior disciplinary record and that he failed to cooperate with relator's investigation. *See*

Gov.Bar R. V(13)(B)(1) and (5). Nelson again objects to the board's finding that he failed to cooperate, but for the reasons explained above, we overrule this objection.

{¶ 16} In mitigation, the board found that Nelson lacked a selfish motive, submitted evidence from three judges attesting to his good character and reputation, and acknowledged some of his misconduct. *See* Gov.Bar R. V(13)(C)(2) and (5). The board also noted that Nelson's eventual cooperation in the disciplinary process—after relator filed its complaint—is entitled to some mitigating effect.

*Applicable precedent*

{¶ 17} The board cited several cases to support its recommended sanction, including *Dayton Bar Assn. v. Scaccia*, 141 Ohio St.3d 35, 2014-Ohio-4278, 21 N.E.3d 290, and *Disciplinary Counsel v. Summers*, 131 Ohio St.3d 467, 2012-Ohio-1144, 967 N.E.2d 183.

{¶ 18} In *Scaccia*, an attorney charged a nonrefundable fee without simultaneously advising the client that she may be entitled to a refund, failed to deposit client funds into his trust account, failed to maintain the necessary trust-account records, and neglected a client matter. Mitigating factors included that the attorney had no prior discipline and submitted evidence of good character and reputation. In aggravation, the attorney failed to make restitution or to acknowledge the wrongfulness of his conduct. Based on those facts, we suspended him for one year, with six months stayed on conditions.

{¶ 19} In *Summers*, an attorney charged a nonrefundable fee without simultaneously advising the client that he may be entitled to a refund, failed to promptly refund his unearned fee after withdrawing from employment, and charged a clearly excessive fee. In mitigation, we found that the attorney had no prior discipline and submitted extensive evidence of good character and reputation. Aggravating factors included failing to make restitution, refusing to acknowledge the misconduct, and a dishonest and selfish motive. Noting that the attorney had

"fabricated mistruths about his clients" and had shown "disdain for the disciplinary process," we imposed an actual six-month suspension on him. *Id.* at ¶ 45, 49.

{¶ 20} The board noted that Nelson's misconduct was not as egregious as the misconduct in *Scaccia* or *Summers*, but because this is Nelson's second disciplinary case, the board concluded that an actual suspension is necessary. Indeed, the board determined that Nelson's "failure to cooperate with a disciplinary investigation for a second time" was the "most significant factor requiring at least six months [of] actual suspended time."

{¶ 21} Nelson objects to the board's reliance on *Scaccia* and *Summers*, arguing that those cases involved substantially worse conduct and more aggravating factors, including the failure to make restitution. He further asserts that an actual suspension in this case is punitive and more severe than necessary to protect the public. Citing *Dayton Bar Assn. v. Washington*, 143 Ohio St.3d 248, 2015-Ohio-2449, 36 N.E.3d 167, he argues for a fully stayed suspension.

{¶ 22} As noted above, the board recognized that *Scaccia* and *Summers* are not directly on point, but because the range of misconduct in those cases is similar to Nelson's and because this is Nelson's second disciplinary case, the board concluded that an actual six-month suspension is warranted in this case as well. We agree. And contrary to Nelson's position, our opinion in *Washington* is not helpful to him. Although the misconduct in *Washington* is somewhat comparable to Nelson's, there were no aggravating factors in that case and there was significant mitigating evidence, including the attorney's clean disciplinary record, cooperation in the disciplinary process, and timely payment of restitution. *Id.* at ¶ 12. Here, Nelson has prior discipline for the same misconduct, and he did not make restitution or cooperate in the disciplinary process until after relator notified him of its intent to file a disciplinary complaint.

{¶ 23} In addition, an actual suspension is necessary to protect the public. The board noted that Nelson violated the rules relating to fees and client trust

accounts because he failed to read and comprehend them, which shows that he does not appreciate his obligations to comply with the professional-conduct rules. For example, Nelson testified that although he had implemented procedures to notify his clients in writing that he lacked malpractice insurance, he could not state whether he had begun to ensure that they sign the notice, as required by Prof.Cond.R. 1.4(c). Indeed, he testified that he had been "lax" with that requirement. We disciplined Nelson for violating Prof.Cond.R. 1.4(c) in 2015, and relator charged him with violating that rule again in this case. Yet at his disciplinary hearing, he testified that he had failed to implement procedures to ensure compliance with the rule. An actual suspension is necessary to give Nelson the time to review and understand his ethical obligations and to implement the procedures necessary to ensure compliance with the Rules of Professional Conduct, especially those applicable to solo practitioners. Accordingly, we overrule Nelson's objections and adopt the board's recommended sanction.

**Conclusion**

{¶ 24} For the reasons explained above, Kenneth Allen Nelson II is suspended from the practice of law for two years, with 18 months stayed on the condition that he engage in no further misconduct. As a condition of reinstatement, Nelson must provide proof that he completed at least six hours of continuing legal education relating to law-office management in addition to meeting the other requirements of Gov.Bar R. X. Upon reinstatement, Nelson shall serve a one-year period of monitored probation focusing on trust-account and record-keeping requirements relating to fees and other client materials. If Nelson fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. Costs are taxed to Nelson.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by FRENCH, J.

_____

**O'DONNELL, J., dissenting.**

{¶ 25} Respectfully, I dissent.

{¶ 26} This grievance is in the nature of a fee dispute, and I would issue a 24 month suspension all stayed, given the refund paid and that respondent eventually cooperated in the disciplinary process.

FRENCH, J., concurs in the foregoing opinion.

_____

D. Chris Cook, Bar Counsel, and Lindsey C. Poprocki, Interim Bar Counsel, for relator.

Daniel G. Wightman, for respondent.

_____