**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. Family*, **Slip Opinion No. 2021-Ohio-4054.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4054

COLUMBUS BAR ASSOCIATION *v.* FAMILY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Family*, Slip Opinion No. 2021-Ohio-4054.]**

*Attorneys—Misconduct—Violation of the Rules of Professional Conduct, including failing to properly maintain and use a client trust account, charging a clearly excessive fee and sending misleading communication regarding a fee, and failing to act with reasonable diligence and to keep client informed about the status of a legal matter—Eighteen-month suspension, with the final 12 months stayed on conditions, effective when or if license to practice law is restored to active status.*

(No. 2021-0978—Submitted September 8, 2021—Decided November 17, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-076.

_____

**Per Curiam.**

{¶ 1} Respondent, Christian Manning Family, of Columbus, Ohio, Attorney Registration No. 0074728, was admitted to the practice of law in Ohio in 2002. On November 26, 2019, we accepted a consent-to-discipline agreement in which Family admitted that she had misused her client trust account and committed professional misconduct in a client matter. We suspended Family's license for one year with the entire suspension stayed on conditions, including that she serve a one-year term of monitored probation focusing on compliance with the client-trust-account requirements in the Rules of Professional Conduct. *Columbus Bar Assn. v. Family*, 159 Ohio St.3d 1221, 2019-Ohio-5514, 149 N.E.3d 542, ¶ 2.

{¶ 2} On December 22, 2020, relator, the Columbus Bar Association, filed a new complaint against Family charging her with misusing her client trust account and mishandling two client matters as well as other misconduct. Family stipulated to some of the charges. After a hearing, a three-member panel of the Board of Professional Conduct found that Family had engaged in the stipulated misconduct, dismissed other charges, and recommended that we suspend her license for 18 months with 12 months conditionally stayed and impose conditions on her reinstatement. The board issued a report adopting the panel's findings of misconduct and recommended sanction. Pursuant to Gov.Bar R. V(17)(B)(3), the parties filed a joint waiver of objections.

{¶ 3} Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction, with two modifications to the sanction.

## Misconduct

*Client-trust-account violation*

{¶ 4} In May 2020, disciplinary counsel received notice from Family's bank that she had overdrawn her client trust account. In response to an inquiry from disciplinary counsel, Family claimed that she had registered her license as inactive and that in the process of closing her law practice, she accidentally

overpaid a refund to one client, which caused her bank to dishonor a refund check issued to a different client. Although Family ultimately closed her client trust account with a zero balance, the parties stipulated that relator was not satisfied that she had properly reconciled the funds in the account.

{¶ 5} Based on this conduct, the parties stipulated and the board found that Family violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property, and to maintain certain records for the account and perform and retain a monthly reconciliation of the funds in the account).

*The Ahmed matter*

{¶ 6} In May 2019, Muna Ahmed retained Family to represent her in a domestic-relations matter. In their written fee agreement, Ahmed agreed to pay Family a $1,500 retainer and $500 per month for the life of the case—a fee structure that Family described as a "subscription" model. The agreement further provided that all payments were "earned upon receipt," although Family failed to advise Ahmed in writing that if Family did not complete the representation for any reason, Ahmed may be entitled to a refund of all or of a portion of the fees paid.

{¶ 7} Notwithstanding the terms of the fee agreement, Family advised Ahmed that she would charge her $250, rather than $500, per month. Ahmed thereafter paid Family $1,500 in May 2019 and $250 in June. But in July, Family sent Ahmed an invoice showing charges based on a $350 hourly rate for attorney work and a $150 hourly rate for paralegal work. Family had never advised Ahmed that there might be additional hourly charges associated with the representation, and the invoice itself noted that subscription clients were billed at a flat rate each month.

{¶ 8} In August, Family sent Ahmed another invoice showing charges based on an hourly rate. In addition, the August invoice noted that all of Family's clients were "being transitioned to hourly," even though Family never sought or

obtained Ahmed's consent to modify the terms of their fee agreement. In September and October, Family again sent Ahmed invoices showing charges based on hourly rates. But inexplicably, those invoices also included the language that Family's subscription clients were billed at a flat rate each month. Despite the confusing invoices, Ahmed continued making $250 monthly payments. However, an October invoice failed to show a credit for Ahmed's payment.

{¶ 9} After Ahmed questioned the accuracy of her bill, Family scheduled a meeting with her. When Ahmed arrived for the meeting, she found Family's office door locked, even though Ahmed could hear Family inside on the telephone. Ahmed called and emailed Family to let her know she was outside, but Family refused to meet with her.

{¶ 10} Family later admitted that her fee agreement with Ahmed was deficient, her invoices were "extremely confusing," and she had breached the fee agreement by unilaterally changing the payment terms. Family also agreed to refund $500 to Ahmed. Based on this conduct, the parties stipulated and the board found that Family violated Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 1.5(d)(3) (prohibiting a lawyer from charging a fee denominated as "earned upon receipt" without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation).

*The Sutton matter*

{¶ 11} In April 2018, Kimberly Sutton retained Family to represent her in a domestic-relations matter. In November 2018, Family notified Sutton that an associate, Doug Kutsko, would attend a December hearing and that he would meet with Sutton beforehand. Sutton expressed concern about paying Kutsko to get up to speed on her case, considering that she had already paid Family to familiarize herself with the matter. In an email, Family indicated that Kutsko's meeting with

Sutton would be at "no cost" to her. Family, however, billed Sutton $125 for the meeting with Kutsko. Family later admitted that it was improper to bill Sutton for a meeting that she had previously indicated would be at no charge to Sutton.

{¶ 12} In July 2019, Family was served with discovery requests in the Sutton matter. Sutton sent Family draft responses and indicated that she objected to some of the requests, including those seeking personal identifying information. Family promised to remove any such personal information and add objections to Sutton's responses, but she produced Sutton's draft responses without removing the personal information or making any objections. Opposing counsel filed a motion to compel discovery, arguing that Sutton's responses were incomplete. The court granted the motion, and after Family failed to comply with the court's order, opposing counsel moved for sanctions against Sutton. Family failed to inform Sutton about the motion to compel, the court's order, or the motion for sanctions. After Sutton discovered the filings on the court's online docket, she terminated the representation.

{¶ 13} Based on this conduct, the parties stipulated and the board found that Family violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 1.5(a).

{¶ 14} We agree with the board's findings of misconduct. We also dismiss any other rule violations alleged in relator's complaint that were not expressly dismissed by the hearing panel.

**Sanction**

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} As for aggravating factors, the board found that Family has prior disciplinary offenses for similar misconduct, exhibited a selfish motive, and engaged in a pattern of misconduct over two disciplinary cases, committing some of the misconduct in this matter while under the stayed suspension imposed in her prior case. *See* Gov.Bar R. V(13)(B)(1), (2), and (3). In mitigation, the board found that Family made restitution, submitted evidence of good character, and acknowledged the wrongful nature of her misconduct. *See* Gov.Bar R. V(13)(C)(3) and (5).

{¶ 17} The board recommends that we suspend Family for 18 months with 12 months conditionally stayed, impose conditions on her reinstatement, and order her to work with a monitoring attorney for a two-year period after her reinstatement. In crafting its recommendation, the board found most instructive cases involving attorneys with previous discipline who engaged in misconduct comparable to Family's. For example, in *Cleveland Metro. Bar Assn. v. Thomas*, 154 Ohio St.3d 57, 2018-Ohio-3267, 110 N.E.3d 1271, we accepted a consent-to-discipline agreement in which the attorney admitted that he had failed to diligently represent clients in a matter and had charged them an improper nonrefundable fee. Only one aggravating factor—the attorney's prior discipline—was present and weighed against multiple mitigating factors, including the attorney's lack of a dishonest or selfish motive and the fact that he had instituted office-management practices to prevent similar misconduct in the future. We imposed a one-year suspension stayed on conditions, including that the attorney serve a period of monitored probation and complete continuing legal education ("CLE") on law-practice management.

{¶ 18} The board also cited *Lorain Cty. Bar Assn. v. Nelson*, 152 Ohio St.3d 222, 2017-Ohio-8856, 94 N.E.3d 551, in which an attorney violated the rule regulating client trust accounts, charged a fee denominated as "earned on receipt"

without simultaneously advising that the client may be entitled to a refund, failed to promptly refund a client's unearned fee, failed to cooperate in a disciplinary investigation, and failed to notify a client that he lacked malpractice insurance. Although the attorney argued for a fully stayed suspension, we concluded that an actual suspension was necessary to protect the public. We noted that he had violated one of the same professional-conduct rules that he had violated in his first disciplinary matter and that after his first case, he failed to implement the procedures necessary to ensure compliance with the rule. *Id.* at ¶ 22-23. We imposed a two-year suspension with 18 months conditionally stayed and ordered him to complete CLE on law-office management and serve a period of monitored probation upon his reinstatement.

{¶ 19} In addition, the board cited *Columbus Bar Assn. v. Watson*, 144 Ohio St.3d 317, 2015-Ohio-4613, 42 N.E.3d 752, in which an attorney charged a client a clearly excessive fee and twice failed to deposit clients' advanced legal fees into his client trust account. Because we had previously disciplined the attorney for similar misconduct, we noted that he had engaged in a pattern of misconduct in two separate disciplinary cases and "even worse, when he engaged in the misconduct [in the second case], his prior disciplinary case was either pending or he had already been placed on probation." *Id.* at ¶ 10. We indefinitely suspended the attorney, in part based on the board's expression of "serious doubts about [the attorney's] ability to effectively and ethically practice law." *Id.* at ¶ 10.

{¶ 20} Family's misconduct here was more egregious than that in *Thomas* and closer to the misconduct in *Nelson* and *Watson*. And like the attorneys in *Nelson* and *Watson*, Family has been previously disciplined for some of the same misconduct. Unlike *Watson*, however, the board has not expressed doubts about Family's ability to practice law effectively and ethically in the future. Thus, we agree that the sanction recommended by the board is commensurate with Family's misconduct, the other circumstances of this case, and our precedent. We also

conclude that the recommended conditions on reinstatement will help to protect the public if Family is reinstated to the practice of law in Ohio. We modify the conditions by directing the monitoring attorney to focus on Family's practice of law, use of her client trust account, and fee agreements. And because Family is currently registered as an inactive attorney, her suspension shall not commence unless and until she restores her license to active status.

## Conclusion

{¶ 21} Christian Manning Family is hereby suspended from the practice of law in Ohio for 18 months, with the final 12 months stayed on the conditions that she refrain from further misconduct and pay the costs of these proceedings. If Family fails to comply with either condition of the stay, the stay will be lifted and she will serve the entire 18-month suspension. In addition to the requirements of Gov.Bar R. V(24), Family's reinstatement shall be conditioned upon her providing proof that she (1) completed at least two three-hour CLE courses on law-office management—approved in advance by relator—as part of her CLE requirements for a suspended attorney and (2) submitted to an evaluation by the Ohio Lawyers Assistance Program and complied with any treatment or counseling recommendations resulting from the evaluation. Upon reinstatement to the practice of law, Family shall be required to work with a monitoring attorney appointed by relator for a two-year period. The monitoring attorney shall focus on Family's practice of law, use of her client trust account, and fee agreements. Because Family is currently registered as an inactive attorney, this sanction has no effect unless and until she restores her license to active status.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Frost Brown Todd, L.L.C., and Russell J. Kutell; Bradley Frick & Associates and Bradley Frick; and Kent R. Markus, Bar Counsel, and Thomas E. Zani, Deputy Bar Counsel, for relator.

Ulmer and Berne, L.L.P., and Alvin E. Mathews, for respondent.

_____