**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lorain Cty. Bar Assn. v. Nelson*, **Slip Opinion No. 2022-Ohio-1288.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1288

LORAIN COUNTY BAR ASSOCIATION *v.* NELSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Nelson*, Slip Opinion No. 2022-Ohio-1288.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to hold funds belonging to clients in a client trust account and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Two-year suspension with one year conditionally stayed.*

(No. 2021-0759—Submitted October 6, 2021—Decided April 21, 2022.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-055.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Kenneth Allen Nelson II, of Avon Lake, Ohio, Attorney Registration No. 0075834, was admitted to the practice of law in Ohio in 2003. On October 22, 2015, we publicly reprimanded Nelson for committing multiple ethical

violations arising from his representation of a single client. *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268. On December 7, 2017, we suspended him from the practice of law for two years, with 18 months conditionally stayed, for multiple ethical violations, including his failure to deposit and hold client fees paid in advance in his client trust account until they were earned. *Lorain Cty. Bar Assn. v. Nelson*, 152 Ohio St.3d 222, 2017-Ohio-8856, 94 N.E.3d 551. Upon reinstating Nelson to the practice of law on July 24, 2018, we ordered him to serve a one-year period of monitored probation "focusing on trust-account and record-keeping requirements relating to fees and other client materials." *Lorain Cty. Bar Assn. v. Nelson*, 153 Ohio St.3d 1239, 2018-Ohio-2895, 109 N.E.3d 1250, ¶ 3.

{¶ 2} In a September 2020 complaint, relator, Lorain County Bar Association, alleged that Nelson violated multiple ethical rules by failing to deposit advance legal fees into his client trust account, making false statements of fact in an application to terminate his monitored probation, and failing to cooperate with relator's disciplinary investigation.

{¶ 3} The parties submitted stipulations of fact and aggravating and mitigating factors. After a hearing, a three-member panel of the Board of Professional Conduct issued a report finding that Nelson had committed four of the charged rule violations and unanimously dismissing two others. The panel recommended that Nelson be suspended from the practice of law for two years, with one year stayed on conditions, and that he be required to work with a monitoring attorney for two years upon his reinstatement to the profession. The board adopted the findings and recommendation of the panel. Nelson objects to the board's recommended sanction—primarily arguing that it is "more than [is] necessary to adequately * * * protect the public from [his] misconduct." For the reasons that follow, we adopt the board's findings of misconduct and suspend Nelson from the practice of law for two years, with the second year stayed on the

conditions recommended by the board, followed by a two-year period of monitored probation.

## Misconduct

### *Modest Means Program Client Fees*

{¶ 4} When Nelson was reinstated to the practice of law in July 2018, he was required to serve one year of monitored probation focused on trust-account and record-keeping requirements relating to fees and other client materials. While on probation, Nelson contacted relator to inquire about its Modest Means Program, a referral service that is intended to provide affordable legal representation to clients who cannot afford to obtain counsel at market rates. Attorneys who participate in the program agree to accept a retainer of $500 and to bill clients at a rate of $75 per hour with the retainer to be replenished as needed. The bar association provides the attorneys with a sample fee agreement that sets forth those terms.

{¶ 5} From early 2019 through early 2020, Nelson accepted 18 referrals from the Modest Means Program. By February 27, 2020, Nelson was aware that relator was investigating his compliance with the terms of his monitored probation and client-trust-account rules and that the investigation related to his handling of the retainers paid by his Modest Means Program clients.

{¶ 6} On April 30, 2020, relator served Nelson with a notice advising him that relator believed he had violated the terms of his probation by continuing to deposit client funds into an improper account. Relator also informed Nelson that it intended to proceed with a petition to revoke his probation and reinstate his stayed suspension.

{¶ 7} At relator's invitation, Nelson appeared at its May 18, 2020 ethics-committee meeting to explain his conduct. Later that week, Nelson filed an application with this court to terminate his probation. Thereafter, relator charged Nelson with (1) failing to deposit the funds he received from his Modest Means Program clients into his client trust account and failing to hold those fees there until

they were earned, (2) engaging in dishonesty and making a false statement of fact in his application to terminate his probation, and (3) failing to cooperate in the ensuing disciplinary investigation.

{¶ 8} At Nelson's disciplinary hearing, Jeannie Motylewski, relator's executive director, testified that she informed each attorney participating in the Modest Means Program how the program worked and provided them with a sample fee agreement that the bar association asked them to use. Motylewski testified that after discussing the program with Nelson by telephone, she emailed him a copy of the fee agreement. A copy of Motylewski's April 25, 2019 email and the attached fee agreement were admitted into evidence over the objection of Nelson, who claimed that he did not recall speaking with Motylewski about the program or receiving those documents.

{¶ 9} In his opening statement and testimony throughout his disciplinary hearing, Nelson maintained that he had misunderstood how the Modest Means Program worked. He claimed that he had believed that it was a flat-fee program, in which the $500 retainers were earned upon receipt, and that as a result of that belief, he did not deposit those retainers into his client trust account.

{¶ 10} Prof.Cond.R. 1.15 sets forth a lawyer's duties regarding the safekeeping of client funds and property. Prof.Cond.R. 1.15(a) requires a lawyer to hold the funds of clients in an interest-bearing client trust account, separate from the lawyer's own property, and Prof.Cond.R. 1.15(c) requires a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses are incurred.

{¶ 11} In his defense, Nelson claimed that he used his own fee agreement for each of his Modest Means Program clients and charged them a flat fee of $500. In addition, he claimed that his fee agreement complied with Prof.Cond.R. 1.5(d)(3), which provides an exception to the general rule that a client's advance payment of legal fees must be deposited into a lawyer's client trust account.

Specifically, Prof.Cond.R. 1.5(d)(3) permits a lawyer to charge a fee denominated as "earned upon receipt" only if the attorney simultaneously advises the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation. Nelson maintained that, consistent with this rule, he was not required to deposit the retainers he received from his Modest Means Program clients into his client trust account.

{¶ 12} However, Nelson testified that he could provide only one of the 18 fee agreements for his Modest Means Program clients and that the rest were missing. While the board found that the one fee agreement Nelson produced satisfied the requirements of Prof.Cond.R. 1.5(d)(3), Nelson's representation in that case did not begin until *after* Nelson was informed that relator had commenced its investigation into his compliance with the terms of his probation and client-trust-account regulations. Indeed, the fee agreement is dated March 2, 2020—at least four days after Nelson learned of relator's investigation.

{¶ 13} Relator requested production of all of Nelson's fee agreements in discovery in October 2020, and Nelson twice requested extensions of time to respond. When Nelson finally responded in January 2021, he objected to relator's request solely on the basis of attorney-client privilege. It was not until his February 2021 deposition—after he had been ordered by the panel chair to produce them—that Nelson first claimed that his fee agreements had been misplaced.

{¶ 14} At his March 2021 disciplinary hearing, Nelson testified that he and his legal assistant were forced to leave his office following protests in downtown Cleveland in May 2020. Nelson said that he believed that his legal assistant had taken a box containing the fee agreements and that she later told him that she was unable to locate the box or the fee agreements but was still looking for them. When asked why he did not provide copies of those documents to relator after learning of relator's investigation in February 2020 and before vacating his office in May 2020,

Nelson claimed that relator did not ask him for copies of his fee agreements and that "[i]f I would have thought of it, absolutely, I would have provided them."

{¶ 15} The board found that Nelson's actions throughout the disciplinary process rendered his testimony and defense suspect. Further, because Nelson had been found to have violated Prof.Cond.R. 1.5(d)(3) in a prior disciplinary case, the board found that he knew or should have known that he had an obligation to prove his compliance with that rule. The board noted that although producing copies of his fee agreements would have been the easiest and most direct way for Nelson to establish his compliance and end the investigation, he did not provide those documents before he fled his office in May 2020. Nelson then waited until his deposition in February 2021 to assert that his fee agreements had gone missing in that exodus. Moreover, he offered no legitimate explanation for his failure (1) to call his legal assistant to testify about how the fee agreements went missing, (2) to call his clients to testify regarding the content of their fee agreements, or (3) to obtain copies of those fee agreements from his clients and provide them to relator.

{¶ 16} The board found that Nelson's conduct violated Prof.Cond.R. 1.15(a) and 1.15(c). The record supports these findings of fact and misconduct.

*Application to Terminate Probation*

{¶ 17} On May 22, 2020, Nelson filed an application with this court to terminate the monitored probation we had imposed in his 2017 disciplinary case, *see Nelson*, 152 Ohio St.3d 222, 2017-Ohio-8856, 94 N.E.3d 551, at ¶ 24. Included with that application was an affidavit in which Nelson averred that "he [had] complied with the conditions of the probation and that there [were] no disciplinary proceedings pending against [him]." Relator alleged that that statement was knowingly false and dishonest because just four days before Nelson filed it, he appeared before relator's ethics committee to address allegations that he had not complied with the terms of his probation.

{¶ 18} Nelson defended against those allegations by arguing that he did not knowingly make any false or dishonest statements in his affidavit because he had believed that he was in compliance with the terms of his probation and had misunderstood the terms of the Modest Means Program.

{¶ 19} The board found that there was insufficient evidence to support a finding that Nelson knowingly made a false statement that he had complied with the terms of his probation because relator had not established that Nelson was aware that he was not in compliance *at the time* he filed his affidavit.

{¶ 20} On the other hand, Nelson admitted that he knew there was a disciplinary investigation pending at the time he submitted his application to terminate his probation. Nelson withdrew his application on the advice of his monitoring attorney less than three weeks after he filed it, but the board found that that withdrawal did "not negate the knowingly false statement" Nelson made in that document. Consequently, the board found that Nelson knowingly made a false statement in violation of Prof.Cond.R. 3.3(a)(1) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) when he asserted that there were no disciplinary proceedings pending against him.

*Alleged Failure to Respond to Disciplinary Investigation*

{¶ 21} The board unanimously dismissed allegations that Nelson's delays in responding to discovery and disclosing that his fee agreements were missing constituted a violation of Prof.Cond.R. 8.1(b) and Gov.Bar R. V(9)(G) (requiring a lawyer to cooperate with a disciplinary investigation). Nevertheless, the board stated that the facts relating to those allegations constituted aggravating factors to be considered in determining the appropriate sanction for Nelson's other rule violations.

**Recommended Sanction**

{¶ 22} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 23} In addition to the single aggravating factor stipulated to by the parties—that Nelson has been disciplined by this court on two prior occasions—the board found that he also engaged in a pattern of misconduct involving multiple offenses. *See* Gov.Bar R. V(13)(B)(1), (3), and (4). And although Nelson had been previously disciplined for treating client fees as earned upon receipt without complying with Prof.Cond.R. 1.5(d)(3), the board noted that he had engaged in that same misconduct an additional 17 times in this case. The board further attributed aggravating effect to Nelson's failure to cooperate in the disciplinary process, as demonstrated by his reluctant and tardy responses to relator's discovery requests and his refusal to acknowledge the wrongfulness of his conduct. *See* Gov.Bar R. V(13)(B)(5) and (7).

{¶ 24} In mitigation, the board adopted the parties' stipulation that Nelson lacked a dishonest or selfish motive and also found that he took corrective action in response to relator's investigation by depositing the credit balances from his Modest Means Program clients into his client trust account. *See* Gov.Bar R. V(13)(C)(2) and (3). In addition, the board noted that there was no evidence that Nelson's clients received anything less than diligent and professional representation, that they suffered any financial harm as a result of his misconduct, or that Nelson profited from his misconduct.

{¶ 25} Relator argued that an indefinite suspension was the appropriate sanction for Nelson's misconduct, while Nelson argued that *if* his conduct amounted to any ethical violations, it warranted a sanction no greater than a fully

stayed suspension. However, the board found that the appropriate sanction in this case fell somewhere in between those recommendations.

{¶ 26} The board noted that the misconduct at issue in Nelson's 2017 disciplinary case included client-trust-account violations that are almost identical to those before us today and emphasized that his misconduct in this case occurred while he was still on probation for those earlier offenses. On those facts, the board concluded that Nelson did not learn from his past misconduct and that the sanction imposed in his most recent disciplinary case—a two-year suspension with 18 months conditionally stayed—did not deter him from engaging in similar misconduct. The board therefore recommended that we suspend Nelson from the practice of law for two years with one year stayed on the conditions that he commit no further misconduct and pay the costs of these proceedings. Additionally, the board recommended that Nelson be required to work with a monitoring attorney, appointed by relator, for two years and that he submit to monthly reviews of his fee agreements and client trust account, to be conducted by his monitoring attorney or an accountant.

**Nelson's Objection to the Board's Report and Recommendation**

{¶ 27} In a single objection, Nelson argues that the board's recommended sanction is greater than is necessary to adequately protect the public from future misconduct. Nelson primarily argues that a two-year conditionally stayed suspension accompanied by a two-year relationship with a monitoring attorney is the appropriate sanction in this case. But he also challenges the board's findings that he made a false statement of fact in his application to terminate his probation in violation of Prof.Cond.R. 3.3(a)(1) and 8.4(c). For the reasons that follow, we find that these arguments are without merit.

{¶ 28} "One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard." *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77,

81, 278 N.E.2d 670 (1972). Here, Nelson claims that he truthfully averred that he had complied with the conditions of his probation and that there were no disciplinary proceedings pending against him when he submitted his application to terminate probation. He maintains that when he filed his affidavit on May 22, 2020, he "*believed* that he was in compliance with the terms of his probation" and that there was no disciplinary proceeding pending against him because relator "was investigating [his] compliance with the terms of probation, not any new violation." (Emphasis added.) That argument carries no weight given that Nelson has *admitted* that he learned of relator's investigation into his handling of client funds in February 2020, and that by the time he appeared before relator's ethics committee on May 18, 2020, he knew that relator intended to proceed with a petition to revoke his probation. In light of that knowledge, and the fact that any violation of his probation would necessarily involve new allegations of misconduct, Nelson could not have honestly claimed that there were no disciplinary proceedings pending against him when he made those averments in his affidavit. We therefore overrule Nelson's objection to the board's findings that his conduct violated Prof.Cond.R. 3.3(a)(1) and 8.4(c). Furthermore, we find that the evidence in this case amply supports the board's findings that Nelson's conduct violated Prof.Cond.R. 1.15(a), 1.15(c), 3.3(a)(1), and 8.4(c), and we adopt those findings as our own.

{¶ 29} With respect to his argument that the board's recommended sanction is too severe, Nelson contends that his misconduct and the aggravating and mitigating factors in this case most closely resemble three cases in which we imposed fully stayed suspensions followed by a term of monitored probation—namely *Mahoning Cty. Bar Assn. v. Gerchak*, 144 Ohio St.3d 138, 2015-Ohio-4305, 41 N.E.3d 404; *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313; and *Disciplinary Counsel v. Adelstein*, 160 Ohio St.3d 511, 2020-Ohio-3000, 159 N.E.3d 1126. Based on that precedent, he argues that his misconduct warrants a sanction no greater than a fully stayed two-year

suspension. But we find that the facts of this case are readily distinguishable from *Gerchak*, *Dockry*, and *Adelstein*.

**{¶ 30}** In *Gerchak*, we imposed a fully stayed two-year suspension on an attorney who failed to deposit and maintain the unearned fees he received from a single client in his client trust account. *Gerchak* at ¶ 7, 11. The only aggravating factor present in that case was a record of prior discipline for rule violations that bore no similarities to Gerchak's subsequent misconduct. *Id.* at ¶ 9. In mitigation, he lacked a dishonest or selfish motive, cooperated in the disciplinary proceedings, submitted evidence of his good character and reputation, acknowledged his wrongdoing, refunded the entire fee even though he had performed some work, and acknowledged the need for mentoring. *Id.* Nelson, in contrast, failed to deposit the fees of 17 clients into his client trust account while he was on probation for prior violations of the same ethical rules. Nelson also engaged in dishonest conduct by submitting a false statement of fact to this court in the affidavit that accompanied his application to terminate his probation.

**{¶ 31}** Nelson asserts that like Gerchak, he submitted evidence of his good character and reputation—specifically, three letters from judges attesting to his good character, reputation, and competence as an attorney. The board, however, did not mention those letters in its report or accord them any mitigating effect. And while the record shows that Nelson did submit three character letters with his post-hearing brief, the hearing transcript does not indicate that he sought or obtained leave from the panel chair to submit those documents after the close of evidence. Moreover, those letters were not authenticated in accordance with Evid.R. 901 or 902, and relator has not stipulated to their authenticity. Furthermore, Jud.Cond.R. 3.3 prohibits a judge from "testify[ing] as a character witness in a judicial, administrative, or other adjudicatory proceeding or otherwise vouch[ing] for the character of a person in a legal proceeding, *except* when duly summoned." (Emphasis added.) Yet there is no record that the jurists who have offered their

opinions regarding Nelson's character were subpoenaed in this case. On these facts, we find that Nelson's character letters have not been admitted into evidence and are entitled to no mitigating effect.

{¶ 32} In *Dockry* and *Adelstein*, we imposed fully stayed one-year suspensions on attorneys who violated some of the same ethical rules that Nelson violated. In contrast to Nelson, Dockry deposited unearned attorney fees into his client trust account. But he also deposited personal funds into that account, used it to pay his personal and business expenses, and took an unauthorized loan from the account. *Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313, at ¶ 6-8. We found that numerous mitigating factors—including the absence of prior discipline, Dockry's prompt payment of restitution, and evidence of his good character and reputation—outweighed the sole aggravating factor of a dishonest or selfish motive. *Id*. at ¶ 23.

{¶ 33} Adelstein failed to deposit unearned legal fees into her client trust account, commingled personal and client funds in that account, used the account to pay personal expenses, and failed to maintain required records pertaining to the account. Her mismanagement of that account resulted in numerous overdrafts and notices that the account contained insufficient funds to honor payment requests. *Adelstein*, 160 Ohio St.3d 511, 2020-Ohio-3000, 159 N.E.3d 1126, at ¶ 5-9. In addition, Adelstein allowed a company to withdraw funds from a second client trust account to settle a fee dispute with a client, even though the client's retainer had never been deposited into that account. *Id.* at ¶ 12.

{¶ 34} Just three aggravating factors were present—Adelstein's record of prior discipline (two suspensions for failing to timely pay her attorney-registration fees), a selfish or dishonest motive, and multiple offenses. *Id.* at ¶ 1, 15-16. Mitigating factors included Adelstein's cooperation in the disciplinary proceedings, the absence of harm to her clients, and letters from two clients who attested to her competence and capability as an attorney. *Id.* at ¶ 28. We also were convinced that

most of Adelstein's violations were "the result of her failure to fully understand her obligations" with respect to her client trust account and "her status as a sole practitioner with no support staff to assist her with those tasks." *Id.*

{¶ 35} In comparison, Nelson had already been disciplined for treating client retainers as earned upon receipt without simultaneously advising his clients in writing that they may be entitled to a refund of all or a portion of the fee if he did not complete the representation. Despite having been suspended from the practice of law for two years—with 18 months conditionally stayed—for that misconduct, Nelson did not deposit the fees paid by 17 Modest Means Program clients into his client trust account. Nor did he submit any evidence other than his own self-serving testimony to establish the affirmative defense that those fees were earned upon receipt because he had complied with Prof.Cond.R. 1.5(d)(3).

{¶ 36} In short, the sanction we imposed in December 2017 was insufficient to deter Nelson from engaging in additional misconduct, and the repeated nature of his client-trust-account violations combined with his lack of candor in his application to terminate probation render the facts of this case more egregious than those in *Gerchak*, *Dockry*, and *Adelstein*.

> "If a prior attempt at discipline has been ineffective to provide the protection intended for the public, then such further safeguards should be imposed as will either tend to effect the reformation of the offender or remove him entirely from the practice. The discipline for a repeated offense may be much greater than would have been imposed were it a first offense, yet such greater discipline is not a meting out of further punishment for prior acts but is a determination of the attorney's fitness to practice."

*Disciplinary Counsel v. Lawson*, 130 Ohio St.3d 184, 2011-Ohio-4673, 956 N.E.2d 839, ¶ 34, quoting *In re Disbarment of Lieberman*, 163 Ohio St. 35, 41, 125 N.E.2d 328 (1955). On these facts, we overrule Nelson's objection to the board's recommended sanction and agree with the board's assessment that a two-year suspension with one year conditionally stayed, followed by two years of work with a monitoring attorney, is necessary to protect the public from future misconduct.

### Conclusion

{¶ 37} Accordingly, Kenneth Allen Nelson II is suspended from the practice of law in Ohio for two years, with one year stayed on the conditions that he commit no further misconduct and pay the costs of these proceedings. If Nelson fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full two-year suspension. Upon reinstatement to the practice of law, Nelson shall be required to serve a two-year period of monitored probation in accordance with Gov.Bar R. V(21). As part of that probation, Nelson shall submit all fee agreements and client-trust-account records to his monitoring attorney on a monthly basis. The monitoring attorney shall review those documents to ensure that Nelson's handling of client funds is in compliance with the Rules of Professional Conduct and client-trust-account regulations. The monitoring attorney shall immediately inform relator or another appropriate disciplinary authority upon discovery or receipt of any evidence that Nelson has failed to either properly account for client funds in his possession or otherwise comply with client-trust-account regulations. The costs of this proceeding are taxed to Nelson.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

O'Toole, McLaughlin, Dooley & Pecora, Co., L.P.A., Matthew A. Dooley, and Michael R. Briach, for relator.

Kenneth Allen Nelson II, pro se.

—————————————