**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Stenson*, **Slip Opinion No. 2024-Ohio-995.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-995

CINCINNATI BAR ASSOCIATION *v*. STENSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Stenson*, Slip Opinion No. 2024-Ohio-995.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—One-year suspension with six months conditionally stayed.*

(No. 2023-0041—Submitted February 6, 2024—Decided March 20, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-047.

_____

**Per Curiam.**

{¶ 1} Respondent, David Edmund Stenson, of Dayton, Ohio, Attorney Registration No. 0042671, was admitted to the practice of law in Ohio in 1989.

{¶ 2} On June 4, 2014, this court imposed a conditionally stayed six-month suspension on Stenson's license to practice law for his failure to abide by a client's decisions concerning the objectives of the representation and the means by which

those objectives were to be pursued and for his neglect of another client's legal matter. *Dayton Bar Assn. v. Stenson*, 139 Ohio St.3d 428, 2014-Ohio-2339, 12 N.E.3d 1182, ¶ 10, 14, 20.

{¶ 3} In a December 2022 complaint, relator, Cincinnati Bar Association, alleged that Stenson neglected a single client's legal matter, failed to reasonably communicate with the client, and failed to inform the client that he did not maintain professional-liability insurance. In January 2023, relator certified to this court that Stenson had failed to file an answer to the complaint, and we ordered Stenson to show cause why an interim default suspension should not be imposed and the corresponding disciplinary order should not be entered against him. After Stenson filed a timely response to our show-cause order and a motion for leave to file an answer to relator's complaint, we remanded the matter to the board for further proceedings, 169 Ohio St.3d 1453, 2023-Ohio-660, 204 N.E.2d 557.

{¶ 4} In September 2023, relator amended its complaint to allege additional rule violations and to add a second count alleging similar misconduct regarding another client. The parties submitted stipulations of fact and misconduct, including ten exhibits, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. At the conclusion of the evidence and on relator's motion, the panel unanimously dismissed three alleged rule violations. The panel issued a report finding that Stenson committed the remaining charged misconduct, with the exception of one alleged violation under the second count, which it unanimously dismissed. The panel recommended that Stenson be suspended from the practice of law for one year with six months stayed. The panel also recommended that certain conditions be placed on Stenson's reinstatement to the practice of law and that he be required to serve a one-year period of monitored probation.

**{¶ 5}** The board adopted the panel's report and recommendation, and the parties have jointly waived objections. After a thorough review of the record, we adopt the board's findings of misconduct and the recommended sanction.

## MISCONDUCT

### Count I—The Grim Matter

**{¶ 6}** In May 2020, Shaunice Grim retained Stenson to assist her in administering the estate of her deceased mother. She paid Stenson a retainer of $1,500 using an electronic-payment application that deposited the payment directly into one of two operating accounts maintained by Stenson. At his disciplinary hearing, Stenson admitted that he had not maintained a separate record for each client for whom he held funds. In addition, Stenson stipulated that he did not maintain professional-liability insurance during the time he represented Grim. Although he testified that his staff provided Grim with a fee agreement that would have included a notice to that effect, neither he nor Grim have been able to locate a signed copy of that agreement.

**{¶ 7}** Stenson filed an application to administer Grim's mother's estate in the Hamilton County Probate Court on May 27, 2020. Because Stenson did not file the appropriate bond with that application, the letters appointing Grim as administrator of the estate were not timely issued. Consequently, the probate court set an August 2020 hearing "for entry or dismissal" of the case. Ten days after that hearing, Stenson filed a fiduciary's bond and Grim was appointed as fiduciary of the estate.

**{¶ 8}** Beginning in December 2020, the probate court issued multiple delinquency notices and orders—including orders for Stenson and Grim to appear in court and for extensions of time to file—regarding the overdue estate inventory and certificate of fee agreement. Those orders culminated with a body-attachment order, served by the Montgomery County Sheriff's Office, compelling Stenson to appear on March 31, 2021, and show cause why he should not be held in contempt

of court. Following the issuance of that body-attachment order and before the scheduled hearing, Stenson filed a certificate of fee agreement and estate inventory in the probate court.

{¶ 9} In the interim, the probate court issued a notice that the estate's final account was overdue. The court later issued a citation ordering Stenson and Grim to appear in court on May 12, 2021, regarding the overdue account, and Stenson subsequently obtained an extension of time to file the final account on or before September 21, 2021. Stenson did not meet that deadline, and he did not comply with a subsequent citation ordering him to appear and show cause for his failure to file the account. The court continued the filing deadline for the account twice more before Stenson was permitted to withdraw as counsel in January 2022. Grim retained new counsel to complete the administration of the estate, and on May 13, 2022—nearly two years after the estate was opened—the court approved the final account.

{¶ 10} The parties stipulated and the board found by clear and convincing evidence that Stenson's conduct in the Grim matter violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with a client's reasonable requests for information), 1.4(c) (requiring a lawyer to inform a client if the lawyer does not maintain professional-liability insurance and to obtain a signed acknowledgment of that notice from the client), and 1.15 (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separately from the lawyer's own property, to maintain a copy of any fee agreement with each client, and to maintain a record for each client on whose behalf funds are held that sets forth the name of the client and the date, amount, and source of all funds received on behalf of such client). We adopt these findings of misconduct and note that based on the parenthetical descriptions of the rules offered in the amended complaint, the parties' stipulations, and the board's report, the

parenthetical description of Prof.Cond.R. 1.15 found by the board shows that the violation is a violation of Prof.Cond.R. 1.15(a).

### Count II—The Russell Matter

**{¶ 11}** Around late September or early October 2020, Arnesta Russell talked to Stenson about injuries she suffered in a fall at a Macy's department store in August 2020. Approximately one week after that discussion, Russell met with Stenson at his office to discuss her claim. At that time, Stenson instructed Russell to contact him when she completed her course of physical therapy. Stenson did not maintain professional-liability insurance during the time he represented Russell and could not produce a written notice signed by Russell advising her of that fact.

**{¶ 12}** In October 2020, Stenson sent a letter to inform Macy's that he represented Russell in relation to her claim against the company. Stenson had minimal contact with Russell until she completed her course of physical therapy in August 2021. In September 2021, Stenson informed Russell that he had received an offer to settle her claim for $2,500, and Russell rejected the offer.

**{¶ 13}** The following May, Stenson sent Russell a letter asking her to send him $335 for the fee to file a lawsuit on her behalf against Macy's. Russell informed Stenson that she would need some time to gather the money. Although Russell delivered a $250 check to Stenson in September 2022, Stenson did not attempt to file a lawsuit until December 2022 and January 2023. However, his online filings were rejected because the credit-card number he entered to pay the filing fee was invalid. In his testimony before the hearing panel, Stenson acknowledged that it was not until after those filings were rejected that he realized that the statute of limitations had elapsed on Russell's claim.

**{¶ 14}** The parties stipulated and the board found by clear and convincing evidence that Stenson's conduct in the Russell matter violated Prof.Cond.R. 1.3, 1.4(c), and 1.4(a)(2) (requiring a lawyer to reasonably consult with a client about the means by which the client's objectives are to be accomplished), 1.4(a)(3)

(requiring a lawyer to keep a client reasonably informed about the status of a matter), and 1.4(a)(4). We adopt these findings of misconduct. And although the parties stipulated that Stenson's conduct also violated Prof.Cond.R. 1.15, the board unanimously dismissed the alleged violation of that rule, citing the insufficiency of the evidence supporting that alleged violation.

## SANCTION

{¶ 15} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 16} The parties have stipulated that Stenson's prior discipline and multiple offenses are aggravating factors in this case. *See* Gov.Bar R. V(13)(B)(1) and (4). The board adopted those stipulations and also noted that Stenson's misconduct in this case is substantially similar to his misconduct in his previous disciplinary case. That fact weighs in favor of a more severe sanction because the prior sanction failed to serve the desired deterrent effect. *See, e.g.*, *Lorain Cty. Bar Assn. v. Nelson*, 168 Ohio St.3d 596, 2022-Ohio-1288, 200 N.E.3d 1039, ¶ 36. The board further found the aggravating factor of harm to the victim because Stenson's lack of diligence harmed Russell, whose personal-injury claim is now barred by the statute of limitations. *See* Gov.Bar R. V(13)(B)(8). The board also found that Stenson refused to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(7). Specifically, the board noted that Stenson attempted to blame his clients for his misconduct by claiming that they had failed to return their signed fee agreements to him. In addition, the board found that Stenson's waiting until the morning of his disciplinary hearing to refund the payments made by Grim and Russell constituted an aggravating factor. *See* Gov.Bar R. V(13)(B)(9).

{¶ 17} As for mitigating factors, the parties stipulated and the board agreed that Stenson did not act with a dishonest or selfish motive. *See* Gov.Bar R.

6

V(13)(C)(2). The board noted that Stenson offered no evidence of his character or reputation. *See* Gov.Bar R. V(13)(C)(5). And while he testified about the stress he experienced following the deaths of several family members, Stenson provided no evidence that he had been diagnosed with any disorder that would qualify as a mitigating factor under Gov.Bar R. V(13)(C)(7).

{¶ 18} Relator recommended that Stenson be suspended from the practice of law for one year with six months stayed on conditions that would require him to complete six hours of continuing legal education ("CLE") focused on law-office management, serve a period of monitored probation, and participate in counseling through the Ohio Lawyers Assistance Program ("OLAP"). Stenson requested a fully stayed one-year suspension with the conditions recommended by relator. Although neither party provided any caselaw to support its position, the board considered three cases that support the imposition of an actual suspension from the practice of law—namely, *Disciplinary Counsel v. Sabol*, 118 Ohio St.3d 65, 2008-Ohio-1594, 886 N.E.2d 191; *Lorain Cty. Bar Assn. v. Weir*, 156 Ohio St.3d 566, 2019-Ohio-2151, 130 N.E.3d 275; and *Cleveland Metro. Bar Assn. v. Johnson*, 127 Ohio St.3d 97, 2010-Ohio-4832, 936 N.E.2d 938.

{¶ 19} After voluntarily dismissing a client's personal-injury case with the client's consent, Sabol realized that he had improperly calendared—and missed—the deadline to refile the action. He immediately told his client to consult another lawyer about the potential legal-malpractice claim. *Sabol* at ¶ 3-4. Sabol had failed to inform the client that he did not carry professional-liability insurance during his representation. He agreed, however, to settle the client's malpractice claim and paid the agreed amount in full. *Id.* at ¶ 5. Although Sabol cooperated in the disciplinary proceeding and made full restitution to his client by resolving the malpractice claim, he had prior discipline—he was publicly reprimanded more than ten years earlier for dismissing the personal-injury claims of two clients without their consent. *Id.* at ¶ 9. Citing that disciplinary history, we concluded that Sabol's

misconduct warranted a stricter sanction than a fully stayed suspension and suspended him from the practice of law for six months. *Id*. at ¶ 9-10.

{¶ 20} Weir neglected two client matters and failed to provide competent representation to one of his clients. *Weir* at ¶ 7, 18-19. He also failed to reasonably communicate with one of those clients, failed to promptly deliver that client's settlement funds to her, failed to notify her that he did not carry professional-liability insurance, and failed to cooperate in the resulting disciplinary investigation. *Id*. at ¶ 5-9. For aggravating factors, Weir had a prior attorney-registration suspension and committed multiple offenses. *Id*. at ¶ 21. Weir also failed to make restitution to a client for a financial loss occasioned by his neglect. *Id*. at ¶ 23. As in this case, the sole mitigating factor in *Weir* was the fact that Weir did not act with a dishonest or selfish motive. *See id*. at ¶ 22. We suspended Weir from the practice of law for one year with six months stayed on the conditions that he commit no further misconduct, make restitution to his client, complete a CLE course on law-office management, and submit to an assessment conducted by OLAP and comply with all treatment recommendations arising from that assessment. *Id*. at ¶ 28.

{¶ 21} Johnson neglected two unrelated legal matters by, among other things, failing to participate in the discovery process and failing to respond to dispositive motions. *Johnson*, 127 Ohio St.3d 97, 2010-Ohio-4832, 936 N.E.2d 938, at ¶ 3-4. In one of those matters, Johnson's failures resulted in a default judgment of more than $330,000 being entered against her clients. *Id*. at ¶ 3. Johnson's failure to prosecute the second matter resulted in the dismissal of the client's complaint without prejudice. *Id.* at ¶ 4. Johnson's subsequent failure to notify that client of the deadline for refiling the case after her withdrawal as counsel resulted in the client's claims being time-barred. *Id*.

{¶ 22} Aggravating factors in *Johnson* included a history of prior discipline for similar offenses and Johnson's admitted failure to notify her clients that she did

8

not maintain professional-liability insurance. *Id*. at ¶ 7 and fn. 2. We also found as aggravating factors a pattern of misconduct involving multiple offenses. *Id*. at ¶ 18. In mitigation, we found that Johnson had not acted with a selfish motive and that in contrast to Stenson, she cooperated in the disciplinary process. *See id*. at ¶ 8. As in this case, we declined to consider Johnson's generalized stress arising from family and other personal matters as a mitigating factor. *See id*. at ¶ 8, 11-15. We suspended Johnson from the practice of law for one year with six months stayed on the conditions that she commit no further misconduct, submit to a mental-health assessment conducted by OLAP, enter into an OLAP contract, and comply with all of OLAP's treatment recommendations. *Id*. at ¶ 23.

{¶ 23} The board acknowledged the similarities between the misconduct at issue in *Sabol*, *Weir*, and *Johnson* and the misconduct at issue in this case. It found that Stenson's prior discipline for similar offenses, his refusal to acknowledge his wrongdoing, and his attempts to deflect blame to his clients suggested that an actual suspension from the practice of law is necessary to protect the public. The board therefore recommends that Stenson be suspended from the practice of law for one year with six months stayed. In addition, the board recommends that Stenson's reinstatement to the practice of law be conditioned on the submission of proof that he has (1) completed a minimum of six hours of CLE focused on law-office management, in addition to the requirements of Gov.Bar R. X, (2) completed a client-trust-account training program offered by disciplinary counsel or a bar association that maintains a certified-grievance committee, (3) submitted to an assessment conducted by OLAP, and (4) complied with any treatment recommendations arising from that assessment. Furthermore, the board recommends that upon reinstatement to the practice of law, Stenson be required to serve a one-year period of monitored probation focused primarily on law-office management and compliance with client-trust-account regulations.

**{¶ 24}** In this case, Stenson disregarded a statute of limitations in the Russell matter and multiple filing deadlines and court orders in the Grim matter. He failed to reasonably communicate with his clients, failed to notify them that he did not carry professional-liability insurance, failed to deposit an unearned fee into his client trust account, and failed to maintain required records regarding that account. Although he stipulated to multiple rule violations, he has failed to acknowledge the wrongful nature of his misconduct and has instead attempted to blame his clients and his own difficult family circumstances for his failures. In light of these facts and their similarity to the facts of *Sabol*, *Weir*, and *Johnson*, we agree that a partially stayed one-year suspension with the reinstatement conditions recommended by the board is the appropriate sanction for the misconduct at issue in this case.

## CONCLUSION

**{¶ 25}** Accordingly, David Edmund Stenson is hereby suspended from the practice of law in Ohio for one year with six months stayed on the condition that he engage in no further misconduct. If Stenson fails to comply with the condition of the stay, the stay will be lifted and he will be required to serve the full one-year suspension.

**{¶ 26}** In addition to the requirements of Gov.Bar R. V(24), Stenson's reinstatement to the practice of law shall be conditioned on the submission of proof that he has (1) completed a minimum of six hours of CLE focused on law-office management, in addition to the requirements of Gov.Bar R. X, (2) completed a client-trust-account training program offered by disciplinary counsel or a bar association that maintains a certified-grievance committee, (3) submitted to an assessment conducted by OLAP, and (4) complied with any treatment recommendations arising from that assessment. Further, upon reinstatement to the practice of law, Stenson shall serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) to be focused primarily on law-office

management and compliance with client-trust-account regulations.  Costs are taxed to Stenson.

Judgment accordingly.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

BRUNNER, J., not participating.

————————————

Maria C. Palermo, Bar Counsel, for relator.

Bieser, Greer & Landis, L.L.P., and David P. Williamson, for respondent.

————————————